# EXHIBIT M

**EXHIBIT**

J (MKHF 2/10/21)

exhibitsticker.com

SR-2-1 33299

# CONSTRUCTION CONTRACT

BETWEEN

## CSX TRANSPORTATION, INC.

AND

Niagara Erecting, Inc.

TO

Remove Bridge Structures from CSX Right of Way

DATE OF CONTRACT ---------------------------------------------------------------------------- March 6, 2013

CSXT - 00079

## TABLE OF CONTENTS

SECTION

DESCRIPTION OF WORK ................................................................................. 1

AFFILIATED COMPANIES ................................................................................ 2

PERIOD FOR COMPLETION ............................................................................. 3

PAYMENT ........................................................................................................ 4

INDEPENDENT CONTRACTOR ........................................................................ 5

UNEMPLOYMENT INSURANCE AND RETIREMENT BENEFITS, ETC. ................. 6

SALES AND USE TAXES .................................................................................. 7

CONTRACTOR'S UNDERSTANDING ................................................................ 8

USE OF RAILROAD PREMISES ........................................................................ 9

USE OF PRIVATE PROPERTY ......................................................................... 10

ASSIGNMENT OF CONTRACT ........................................................................ 11

SUBCONTRACTORS ....................................................................................... 12

CONTRACTOR'S RISKS .................................................................................. 13

WAIVER ......................................................................................................... 14

ADJUSTMENTS OF DISPUTES ....................................................................... 15

LAWS, ORDINANCES AND REGULATIONS ..................................................... 16

PERMITS ........................................................................................................ 17

PROTECTION OF RAILROAD SERVICES AND FACILITIES .............................. 18

SAFETY AND ENVIRONMENTAL REQUIREMENTS ......................................... 19

INDEMNITY .................................................................................................... 20

INSURANCE AND BOND ................................................................................ 21

PUBLIC PROJECTS, ADDITIONAL INSURANCE REQUIREMENTS ................... 21.A

EVIDENCE OF INSURANCE ............................................................................ 22

SUPERINTENDENCE ...................................................................................... 23

ORDER AND DISCIPLINE ............................................................................... 24

NOTICE - HOW SERVED ................................................................................ 25

POINTS AND INSTRUCTIONS ........................................................................ 26

PRESERVATION OF STAKES .......................................................................... 27

INSPECTION ............................................................................................................ 28

AUTHORITY OF THE CHIEF ...................................................................................... 29

DEFECTIVE WORK OR MATERIAL ............................................................................ 30

PATENTED DEVICES .................................................................................................. 31

RIGHTS OF VARIOUS INTERESTS .............................................................................. 33

ORDER OF COMPLETION; USE OF COMPLETED PORTIONS ....................................... 34

CHANGES ................................................................................................................... 35

EXTRA WORK ............................................................................................................. 36

QUANTITIES AND UNIT PRICES ................................................................................. 37

DAILY REPORTS AND ACCOUNTING INFORMATION .................................................. 38

MONTHLY ESTIMATE .................................................................................................. 39

FINAL ESTIMATE; LIEN RELEASES ............................................................................. 40

FINAL INSPECTION AND ACCEPTANCE ....................................................................... 41

SUSPENSION OF WORK ............................................................................................... 42

FAILURE OF PERFORMANCE BY CONTRACTOR ......................................................... 43

TERMINATION WITHOUT FAULT OF CONTRACTOR .................................................... 44

REMOVAL OF EQUIPMENT .......................................................................................... 45

CLEANING UP ............................................................................................................. 46

SUBCONTRACTORS AND LIENS .................................................................................. 47

WITHHOLDING OF PAYMENT ..................................................................................... 48

OFFSET PROVISIONS ................................................................................................... 49

PRECEDENCE .............................................................................................................. 50

BRIBES PROHIBITED ................................................................................................... 51

AUDIT ........................................................................................................................ 52

CANCELLATION UPON NOTICE ................................................................................... 53

ABANDONMENT OR DISCONTINUANCE OF SERVICE .................................................. 54

RELATIONSHIP TO OTHER CONTRACTS ..................................................................... 55

EQUAL EMPLOYMENT ................................................................................................ 56

GENERAL PROVISIONS ................................................................................................ 57

# CONSTRUCTION CONTRACT

THIS CONTRACT is made and entered into as of this 6th day of March by and between CSX TRANSPORTATION, INC., a Virginia corporation which its principal place of business at 500 Water Street, Jacksonville, Florida 32202 ("RAILROAD"), and Niagara Erecting, Inc ("CONTRACTOR"), which has its principal place of business at 500 Ohio Street, Lockport, NY 14094.

WITNESSETH: That in consideration of the covenants and agreements herein and the benefits which will inure to both parties, the parties do hereby covenant and agree as follows:

1.      DESCRIPTION OF WORK:

CONTRACTOR shall furnish all materials, superintendence, labor, equipment, tools, supplies, and transportation, except as hereinafter specified, and shall execute, construct and finish in a safe, environmentally correct, expeditious, substantial and workmanlike manner, satisfactory to the Chief Engineer of RAILROAD or his or her designee (the "Chief"), the following (hereinafter referred to as "Work"); Provide labor, materials and supervision to mobilize equipment to remove bridge structure as agreed by Engineer Signal Construction.

The work is more fully described and set forth in the papers, plans and specifications that are attached hereto as Exhibit A and incorporated into this Contract.

2.      AFFILIATED COMPANIES:

RAILROAD as used in this Contract shall not only refer to CSX Transportation, Inc. but also to its subsidiaries and its Affiliates (as defined in Section 20).

3.      PERIOD FOR COMPLETION:

The date for starting the Work shall be fixed by written notice to proceed from the Chief to CONTRACTOR, which notice shall be mailed to or served upon CONTRACTOR not less than ten (10) days prior to the starting date. CONTRACTOR shall commence Work on the starting date and shall complete Work within THREE HUNDRED SIXTY FIVE (365) calendar days thereafter (the "Date of Completion). In setting the Date of Completion, RAILROAD has given due consideration to the fact that significant work is generally not accomplished on Saturdays, Sundays, or legal holidays or during seasonal periods of inclement weather. Upon written application of CONTRACTOR, the Chief may at his or her sole discretion consent in writing to an extension of the Date of Completion.

Any request for extension of the Date of Completion shall be submitted to the Chief in writing within ten days after the event causing the delay. A request for extension of the Date of Completion shall Include: (a) the circumstances causing the alleged delay and documentation of said circumstances as may be required by the Chief, (b) the operation(s) alleged to have been delayed, (c) the calendar dates and times on which the involved operation(s) were delayed and (d) proposed length of the requested extension in calendar days or hours.

If the Chief determines that the controlling operation(s) were delayed because of circumstances beyond the control of and without fault or negligence of CONTRACTOR and that such circumstances could not have been reasonably anticipated at the time of the bid, then the Chief may grant an extension sufficient to compensate for the delay.

If the Chief does not grant CONTRACTOR's request for an extension, CONTRACTOR may obtain arbitration of the Chief's decision if it initiates an arbitration action within 30 days after the date of such decision. Any such arbitration action shall be progressed in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered in arbitration may be entered by any court having jurisdiction. Failure to initiate arbitration within the specified 30-day period will result in the Chief's decision becoming final and conclusive. Such arbitration shall be CONTRACTOR's sole and final means of redress.

Rains or other inclement weather conditions and related adverse soil conditions will be considered a valid basis for granting of an extension only when such conditions are unreasonable and unforeseeable, and if the project records show that they did in fact result in material delay to one or more controlling item(s) of work

4.      PAYMENT:

CONTRACTOR agrees to accept as full payment for all materials, superintendence, labor, equipment, tools, supplies, transportation and anything else used and performed by CONTRACTOR in connection with the Work, and for completing the Work, the amounts set forth in Exhibit A and/or any other consideration calculated pursuant to the provisions of Exhibit A.

5.      INDEPENDENT CONTRACTOR:

RAILROAD shall exercise no control whatsoever over the employment, discharge, compensation of or services rendered by CONTRACTOR'S employees, or the construction practices, procedures, and professional judgment employed by CONTRACTOR to complete the Work, and it is the intention of the parties that CONTRACTOR shall perform its obligations under this Contract as an independent contractor, and that nothing in this Contract shall be construed in a manner inconsistent with that status.

6.      UNEMPLOYMENT INSURANCE
AND RETIREMENT BENEFITS, ETC.:

(A)     CONTRACTOR hereby accepts all responsibility and liability for payment of any and all contributions or taxes for unemployment insurance or old age and/or survivorship benefits, retirements, pensions or annuities, and withheld income taxes, now or hereafter imposed by the Government of the United States, any state, or any political subdivision of either, including all such payments, contributions, or taxes computed on the basis of the wages, salaries or other remunerations paid to persons employed by CONTRACTOR on the Work.

(B)    CONTRACTOR further agrees to comply with all administrative rules and regulations respecting the responsibility and liability for the aforesaid payments, contributions or taxes, and further agrees to reimburse RAILROAD for any of the aforesaid payments, contributions or taxes which RAILROAD may be required to pay.

7.    SALES AND USE TAXES:

All invoices submitted by CONTRACTOR shall be separated by the division of costs as submitted in the bid proposal.  CONTRACTOR shall be responsible for and pay all sales and/or use taxes assessed under any federal, state or local law in effect during the term of this Contract against any materials, tools, supplies, services or equipment furnished directly by CONTRACTOR and used in the Work.

8.    CONTRACTOR'S UNDERSTANDING:

(A)    The quality of all materials and workmanship will meet or exceed the general specifications, special specifications, plans and all other documents of reference which are in or incorporated by reference into the bid proposal.

(B)    CONTRACTOR has by careful examination satisfied itself as to the nature and location of the Work, the configuration, composition and physical condition of the area to be affected by the Work, the character, quality and quantity of materials to be utilized, the character of equipment and facilities needed preliminary to and during its performance of the Work, the general and local conditions, and all other matters which may in any way affect the Work.

(C)    No oral agreement or conversation, either before, during, or after the execution of this Contract, shall affect or modify it in any way whatsoever.

9.    USE OF RAILROAD PREMISES:

(A)    RAILROAD shall provide the premises upon which the Work is to be done, and to the extent it can conveniently do so, it will permit CONTRACTOR to use as much of said premises as may be required for the erection of temporary construction facilities and storage of materials.  CONTRACTOR shall provide, at its cost and expense, any additional premises that may be required.

(B)    CONTRACTOR may occupy with its construction plant any unused location within the area controlled by the RAILROAD, subject to the approval of the Chief.  CONTRACTOR will submit a plan of the area to be occupied to the Chief for approval.  All necessary construction in connection therewith shall be done in a neat, workmanlike manner to the Chief's satisfaction.

(C)    CONTRACTOR, at its expense, shall restore to its original condition any portions of land outside the limits of the permanent work which RAILROAD has permitted CONTRACTOR to use for temporary construction facilities, plant, and/or storage of materials.

10.    USE OF PRIVATE PROPERTY:

Before entering upon or making use of any third party's private property ("Private Property") in connection with the Work, CONTRACTOR, at its expense, shall obtain and file with the Chief, the written permission of the owner of such Private Property for such use, and, subsequent to vacation of such Private Property, shall submit to the Chief a properly executed release from any consequence of such use.

11.    ASSIGNMENT OF CONTRACT:

CONTRACTOR shall not assign any or all of its rights or obligations under this Contract without the prior written consent of the Chief.  Such consent shall not release or relieve CONTRACTOR from any of its obligations and liabilities under this Contract.

12.    SUBCONTRACTORS:

(A)    CONTRACTOR shall submit to the Chief for approval a list of any and all subcontractors.  This submission shall show the portions of the Work assigned to each such subcontractor, and no subcontract for any part of the Work shall be awarded without approval of the Chief.  Such approval shall not release or relieve CONTRACTOR from any of its obligations and liabilities under this Contract.  Upon written request of the Chief, CONTRACTOR shall terminate employment of any subcontractor who, in the opinion of the Chief, fails to perform the portion of the Work undertaken by it in a satisfactory manner or creates any hazard in, on, or about the Project.

(B)    CONTRACTOR shall furnish the Chief a written statement, properly endorsed by all involved subcontractors, certifying that the provisions of this Contract have been incorporated by reference in all subcontracts before any subcontractor may commence work on the Project.

13.    CONTRACTOR'S RISKS:

Work covered by this Contract, including any and all work performed by subcontractors, shall be performed at the risk of CONTRACTOR in every respect, and CONTRACTOR shall be responsible therefor until the Work is completed and accepted.  This responsibility shall include, but is not limited to, damage to and loss of any material or equipment furnished and delivered by RAILROAD for incorporation in the Work.

14.    WAIVER:

No waiver on the part of RAILROAD or the Chief, of any term, provision or covenant of this Contract, shall constitute a contractual precedent, nor bind RAILROAD or the Chief to waive any succeeding breach of the same term or any other term(s), provision(s) or covenant(s) of this Contract.  A waiver of a breach shall not be of any force and effect unless it is made in writing.

15.    ADJUSTMENTS OF DISPUTES:

(A)    The Chief shall serve as the initial interpreter of the provisions of this Contract. Any claim or dispute that may arise between the parties relative to this Contract shall be referred initially to the Chief for decision, and he or she shall render a decision in writing within a reasonable time.

(B)    CONTRACTOR may obtain arbitration of any decision rendered by the Chief pursuant to Section 15(A), above, so long as CONTRACTOR initiates such arbitration action within thirty (30) days after the date of the Chief's decision. Such arbitration action shall be progressed in the following manner:

1.    Rules and Selection of Arbitrators. Arbitration of disputes under this Agreement shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then applicable (provided that in the event of any conflict between such rules and this Section, the terms of this Section shall control). Within 30 days of the service of a notice of request to arbitrate, and CONTRACTOR will appoint one arbitrator who is mutually agreeable to both RAILROAD and CONTRACTOR. Such arbitrator will be chosen from a list of qualified arbitrators provided by the AAA. (In the event that RAILROAD and CONTRACTOR are not able to agree upon an arbitrator, each party shall select one arbitrator, and the two arbitrators shall select a third arbitrator who shall serve as the arbitrator of any dispute hereunder.) In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on the dispute in question would be barred by applicable statute of limitations.

2.    Powers of Arbitrator. The arbitrators shall have the power to grant all appropriate legal and equitable relief (both by way of interim relief and as part of its final award) other than punitive damages, as may be granted by any court of the U.S., to carry out the terms of this Agreement (e.g., declaratory and injunctive relief and damages). RAILROAD and CONTRACTOR expressly waive any right to punitive damages arising out of any dispute under this Agreement. The arbitrator shall be required to follow the terms and provisions of this Agreement and the law then applicable to the dispute. All awards and orders of the arbitrator (including, but not limited to, interim relief) shall be final and binding on the parties, and judgment on the award may be entered in any court of competent jurisdiction. Unless the parties mutually agree otherwise, arbitration shall take place in Jacksonville, Florida.

3.    Costs of Arbitration. Costs and fees of the arbitrator and of the AAA shall be borne equally by RAILROAD and CONTRACTOR. Each party shall bear its own attorney's fees, and expert and non-expert witness costs and expenses, in connection with the arbitration proceeding.

Failure to initiate arbitration within the required thirty (30) day period will result in the Chief's decision becoming final, conclusive, and unappealable. Notwithstanding the foregoing, RAILROAD reserves all of its rights to, and CONTRACTOR agrees that RAILROAD may, seek all available relief, including emergency equitable and injunctive relief, mandatory or otherwise, through any court of competent jurisdiction.

16.    LAWS, ORDINANCES AND REGULATIONS:

CONTRACTOR shall comply with all Federal, State and local laws, statutes, ordinances, and regulations pertaining to the Work.

17.    NOTIFICATIONS/PERMITS:

(A)    CONTRACTOR shall procure in a timely fashion and at its own expense, shall make all required notifications to Federal, State and local authorities and procure all required contractor's permits and licenses, including but not limited to building, construction, health and safety permits and all contractor's permits listed in the attached special provisions as necessary for the progression and completion of the Work. CONTRACTOR shall deliver to RAILROAD any and all certificates of inspection covering any part of the Work for which a certificate may be required.

(B)    CONTRACTOR shall be solely responsible for failure to obtain any required contractor's permit(s), license(s), or approval(s), for any violation associated with such failure, and for costs and expenses associated with compliance or remediation. CONTRACTOR shall accordingly defend, indemnify, and hold harmless RAILROAD with respect to any and all fines, penalties, and remedial costs resulting from failure to obtain any required contractor's permit(s), license(s), or approval(s).

(C)    CONTRACTOR expressly agrees and warrants that it shall conform and limit its activities to the terms of any applicable permit(s), approval(s) and authorization(s), and shall comply with all applicable statutes, ordinances, rules, regulations, requirements and laws of any governmental authority having jurisdiction over the CONTRACTOR'S activities, including the location, contract, excavation and protection regulations of the Occupational Safety and Health Act (OSHA) (29 CAR 1926.651(b), et al.), and state underground utility requirements.

18.    PROTECTION OF RAILROAD SERVICES AND FACILITIES:

(A)    CONTRACTOR shall use special care and vigilance to avoid damage to trains, tracks or other facilities of RAILROAD, and it shall conduct Work so as not to interfere with the movement of trains or operations of RAILROAD. CONTRACTOR shall not proceed with any Work that might endanger or interfere with the movement of trains, railroad operations, or other railroad facilities until protection satisfactory to the Chief has been provided.

(B)    If, in the sole opinion of the Chief, trains, tracks or other railroad facilities are or may become endangered by the operations of CONTRACTOR, CONTRACTOR shall immediately take corrective action as may be specified by the Chief to restore safety. If CONTRACTOR fails to promptly take the corrective action specified by the Chief, RAILROAD may take whatever actions are necessary to restore safe conditions at CONTRACTOR'S sole cost and expense and/or terminate this Contract.

(C)     Any and all costs and expenses incurred by RAILROAD in conjunction with restoring safe conditions as provided in Section 18(B), above, and any and all costs and expenses associated with damages to trains, tracks or other railroad facilities caused by CONTRACTOR'S operations shall be charged against CONTRACTOR and either paid by it or deducted from any amounts which are due or which may become due under this Contract.

(D)     Unless otherwise provided for herein, the cost of furnishing trainmen or flagmen deemed necessary by the Chief for continuity and safety of train operations shall be borne by RAILROAD.

19.     SAFETY, ENVIRONMENTAL REQUIREMENTS AND BACKGROUND CHECKS:

(A)     SAFETY

(1)     CONTRACTOR shall furnish and maintain, at its sole cost and expense and to the satisfaction of the Chief, all requisite lights, barricades, safeguards, fences and other facilities for the protection of the Work and for the safety of the general public and employees of RAILROAD and of CONTRACTOR. CONTRACTOR shall post signs at all construction entrances which read "HARD HAT AND PROPER SAFETY EQUIPMENT REQUIRED BEYOND THIS POINT." Caution shall be exercised at all times with regard to protection of persons and property. Safety provisions of applicable laws and building and construction codes shall be observed. Machinery, and other actual or potential hazards, shall be guarded in accordance with the safety provisions of the Manual of Accident Prevention in Construction, published by the Associated General Contractors of America, to the extent that such provisions are not inconsistent with applicable laws or regulations.

(2)     CONTRACTOR shall obtain from RAILROAD and become familiar with the booklet entitled "THE CSX SAFE WAY." CONTRACTOR shall also comply with all RAILROAD safety requirements while performing work on RAILROAD property. Said requirements include but are not limited to wearing appropriate personal protective equipment such as hard hats, hearing protection, reflective vests, safety glasses with side shields, gloves, steel toed shoes (safety shoes), hearing protection, etc.

(3)     In the interest of safety, the following procedures must be followed by CONTRACTOR while performing work on RAILROAD property:

(a)     CONTRACTOR shall contact the Chief and coordinate a preconstruction conference that will include a safety awareness briefing (the "Conference"). The Conference will include representatives of the RAILROAD, the CONTRACTOR, the CONTRACTOR'S representatives, and the RAILROAD supervisor assigned to the geographic territory in which the work is located. The purpose of the Conference will be to develop a safety action plan, establish safety procedures, review safety policies and regulations, review compliance with Roadway Worker Safety and Bridge Worker Safety, develop an emergency action plan, and discuss the specifics of the Work.

After the Conference, CONTRACTOR shall conduct daily job briefings with everyone involved in the Work. These job briefings will cover the sequence of the tasks to be performed and a detailed review of the hazards associated with the tasks and will comply with the appropriate FRA Regulations. The job briefings will be followed by inspection of all tools and equipment. CONTRACTOR shall take all necessary steps to insure that the required personal protective equipment is available and in good condition. Care should be taken to make sure everyone understands the instructions and how the job is to be performed. Follow up job briefings must be conducted if replacements are called, if the Work or conditions change, or if the Work stops and resumes during the day.

CONTRACTOR shall insure that it and everyone involved with the Work possesses a clear understanding as to whether equipment or workers will foul live or potentially live railroad tracks, the estimated length of time available to the CONTRACTOR, and the actual starting and completion time (including work breaks). All parties involved must have a clear understanding as to whether flagging protection, as defined by the FRA, will be required at the Work site, and if so, the nature of such flagging protection. If a railroad flagman is required, CONTRACTOR shall make the necessary arrangements through RAILROAD's local supervisor. CONTRACTOR'S personnel shall remain within the boundaries specified by the flagman. If CONTRACTOR'S personnel do not remain within those boundaries, the flagman may order CONTRACTOR to suspend the Work, and CONTRACTOR shall immediately comply.

(b)     CONTRACTOR hereby acknowledges that its employees and sub-contractors are defined as Roadway Workers as specified by the follow definition
(excerpt from 49 C.F.R. 214.7, the Railroad Workplace Safety Regulation (the "Regulation")).

*"Roadway worker means any employee of a railroad, or of a CONTRACTOR (emphasis added) to a railroad, whose duties include inspection, construction, maintenance or repair of railroad track, bridges, roadway, signal and communication system, electric traction systems, roadway facilities or roadway maintenance machinery on or near track or with the potential of fouling a track, and flagmen and watchmen/lookouts as defined in this section.'*

As required by the Regulation, CONTRACTOR certifies that all of its personnel (and subcontractors) working under this Contract have received On- Track Roadway Worker Safety training through a course that complies the FRA Regulation, and has the content of the course approved by RAILROAD.

(c)     If possible, Work to be performed by the CONTRACTOR should be transferred to an isolated area away from live railroad tracks and ongoing RAILROAD operations. If this is not feasible, the Chief will arrange for a qualified RAILROAD flagman to provide protection at the Work site. CONTRACTOR shall make any such necessary arrangements through RAILROAD's local operating supervisors. CONTRACTOR shall give RAILROAD a minimum of ten working days advance notice for flagging or radio protection service required, unless otherwise arranged with RAILROAD. If the CONTRACTOR's personnel do not remain within the boundaries specified by the RAILROAD flagman, he or she may order CONTRACTOR to suspend the Work, and CONTRACTOR shall immediately comply.

(d)     CONTRACTOR shall perform all Work during daylight hours when practical. CONTRACTOR shall comply with all state or federal labor laws pertaining to its employees engaged in the Work.

(e)    CONTRACTOR shall comply with all applicable FRA and OSHA regulations and shall provide copies of its written programs applicable to the Work to the Chief. Such written programs shall include Hazard Communications and Material Safety Data sheets for materials and chemicals that will be used during the Work. CONTRACTOR shall certify in writing to RAILROAD that the personnel performing the work have completed all training programs required under OSHA regulations for the Work to be performed by the CONTRACTOR.

(f)    CONTRACTOR shall not cross RAILROAD's right-of-way and tracks with vehicles or equipment, except at crossings which are either open to the public or other crossings as may be approved by the Chief.

(g)    CONTRACTOR shall submit for review by RAILROAD plans and specifications for any contemplated use of explosives on RAILROAD property and certification of any required state or federal licenses.

(h)    CONTRACTOR shall secure written permission from RAILROAD for the design, location, or construction of any temporary structures; scaffolding, or rigging on, over, or adjacent to the RAILROAD's property. The erection, maintenance, and use of such structures shall be the responsibility of the CONTRACTOR. Forms for concrete, falsework, and bracing on, or over the RAILROAD's property shall be approved by RAILROAD with respect to any reduction of clearance from the clearance specified in the written permission. All work on or over RAILROAD's property shall be approved by RAILROAD with respect to any reduction of clearance. All work on or over the RAILROAD's property shall be performed subject to the general supervision of RAILROAD and according to plans reviewed by RAILROAD.

(i)    Should RAILROAD or CONTRACTOR become aware of any condition that potentially affects the safety of train movements, structures or personnel on site, Work shall immediately cease, and shall not be continued until the condition is corrected to the satisfaction of the Chief.

(5)    CONTRACTOR SHALL COMPLY WITH THE REQUIREMENTS OF THE FEDERAL RAILROAD ADMINISTRATION ROADWAY WORKER PROTECTION, 49 CODE OF REGULATIONS (CFR) PART 214, INCLUDING WITHOUT LIMITATION THE TRAINING AND QUALIFICATION REQUIREMENTS, AND WITH THE RAILROAD'S ON-TRACK SAFETY PROGRAM AND ON-TRACK SAFETY MANUAL. CONTRACTOR SHALL COMPLY WITH FRA'S RULE REGARDING ROADWAY WORKER PROTECTION (THE "RULE") AND SHALL ALSO COMPLY WITH ANY REVISIONS TO RAILROAD'S ON-TRACK SAFETY PROGRAM AND ON-TRACK SAFETY MANUAL. THE CONTRACTOR ACKNOWLEDGES ITS RESPONSIBILITY TO RAILROAD THAT ALL OF ITS WORKERS COVERED BY THE RULE ARE TRAINED AS REQUIRED BY THE RULE.

(B)    ENVIRONMENTAL.

(1)    CONTRACTOR shall obtain from RAILROAD a current copy of RAILROAD's publication entitled "ENVIRONMENTAL REFERENCE MANUAL" and shall review it with all employees of CONTRACTOR or its subcontractors who will be assigned to the Work. CONTRACTOR and its employees and subcontractors and their employees shall comply with all regulations, policies and environmental safety rules set forth in such publication.

(2)    After receiving notice to proceed from the Chief, CONTRACTOR shall confirm that all environmental permits required by local, state, and federal agencies have been acquired and shall post such permits as directed by the issuing environmental agency or agencies.

(3)    CONTRACTOR shall take all necessary measures to minimize soil erosion and siltation, and to prevent water pollution, air pollution, and soil contamination caused by its performance of the Work. CONTRACTOR shall also comply with all applicable state and federal statutes and regulations relating to pollution prevention and control and sedimentation and erosion control, and shall provide copies of its written programs applicable to the Work to the Chief. These statutes include, but are not limited to the following:

(a)    Comprehensive Environmental Response, Compensation & Liability Act.
(b)    Federal Hazardous Materials Transportation Act.
(c)    Federal Oil Pollution Act of 1990.
(d)    Federal Clean Air Act.
(e)    Federal Clean Water Act.
(f)    Superfund Amendments and Re-authorization Act.
(g)    Federal Resource Conservation and Recovery Act.
(h)    Toxic Substance Control Act.
(i)    United States of America Department of Transportation, Federal Transit Administration, "MASTER AGREEMENT", (Form FTAMA(1), 10/1/94).
(j)    Rivers and Harbors Act.
(4)    CONTRACTOR shall post the following in plain view on the job site:
(a)    "CSX TRANSPORTATION ENVIRONMENTAL HOTLINE": 1-800-325-8182, along with any local emergency numbers.
(b)    Any publications, statutes, emergency numbers, or other information required by local authorities.

C.    BACKGROUND CHECKS.

(1)    E-Verify. CONTRACTOR shall:

(a) utilize the U.S. Department of Homeland Security's E-Verify system to verify the employment eligibility of all new employees hired by the Vendor/Contractor during the term of the contract; and

(b)  include an express requirement in any subcontract that subcontractors performing work or providing services pursuant to the state contract utilize the U.S. Department of Homeland Security's E-Verify system to verify the employment eligibility of all new employees hired by the subcontractor during the contract term.

(2)  e-RAILSAFE Program. Suppliers and their subcontractors performing services on CSX property must complete the e-RAILSAFE Program at their own cost, including completing the background screening process and receiving the photo identification badge. Ongoing compliance with the e-RAILSAFE Program will be audited by CSX throughout the duration of any Services performed by contractor. For questions, please contact e-VERIFILE at 770-859-9899 or visit their web site at www.e-railsafe.com.

20.   INDEMNITY:

A.     CONTRACTOR shall indemnify, defend, and hold harmless RAILROAD and its affiliates with respect to any and all attorneys' fees, liability, claims, demands, payments, suits, actions, recoveries, penalties, costs, legal expenses, judgments, settlements, and damages of every nature, degree, and kind (including direct, indirect, consequential, incidental, and punitive damages), for any personal injury, including but not limited to bodily injury to or death of any person(s) (including, but not limited to the employees of RAILROAD, CONTRACTOR, or their affiliates or), for the loss of or damage to any property whatsoever (including but not limited to property owned by or in the care, custody, or control of RAILROAD, CONTRACTOR, or their affiliates or, and environmental damages and any related remediation brought or recovered against RAILROAD and its affiliates), arising directly or indirectly from the presence of CONTRACTOR, its agents, employees, invitees, or subcontractors, or its subcontractors' agents, employees or invitees on or about RAILROAD property or the performance of this Contract or activities incidental thereto, whether or not attributable in whole or part to the negligence of RAILROAD or its affiliates.

B.     The extent of the indemnification provided to RAILROAD and its affiliates for liability caused in whole or in part by any act, omission or default by RAILROAD or its affiliates is limited to [$1,000,000.00.] The parties acknowledge and agree that this monetary limit bears a commercially reasonable relationship to this Agreement, in so far as, among other factors, the parties have taken the availability and cost of insurance and other risk transference devices into account in setting the compensation due to CONTRACTOR under this Agreement. The parties waive any and all right or opportunity to contest the enforceability of this provision and agree that, in the event this provision is found unenforceable by the final, unappealable judgment of a court of competent jurisdiction, this provision shall be construed so as to be enforceable to the maximum extent permitted by applicable law.

C.     CONTRACTOR shall strictly comply with any federal, state, or local laws, statutes, codes, ordinances, rules, and regulations applicable to its performance of the Work and expressly agrees to indemnify, defend, and hold harmless RAILROAD and its affiliates with respect to any fines, penalties, liabilities, or other consequences for its failure to so comply.

D.     For the purpose of this Contract, the term "affiliates" of a party includes all entities, directly or indirectly, owned or controlled by or under common control of, or controlling such party and their respective officers, directors, employees and agents.

E.     The provisions of this Section shall survive the termination or expiration of this Contract.

21.   INSURANCE AND BOND:

(A)     CONTRACTOR at its sole cost and expense shall procure and maintain during the continuance of the Work, until such Work is fully completed and accepted by RAILROAD, a policy of Commercial General Liability Insurance covering CONTRACTOR's direct and assumed liability under this Contract, and covering RAILROAD as an additional named insured. The Commercial General Liability Insurance shall include Contractual Liability Insurance for liability assumed by CONTRACTOR under this Contract and that must be indicated on the Certificate of Insurance. IF CONTRACTOR has blanket contractual coverage [CONTRACTOR may be required to delete the exclusion of coverage for construction or demolition operations within fifty feet (50') of any RAILROAD right of way property. The policy shall provide coverage with available limits of not less than FIVE MILLION DOLLARS ($5,000,000.00) Combined Single Limit per occurrence, and shall carry a higher limit if RAILROAD so specifies. CONTRACTOR shall be the Named Insured on the Commercial General Liability Policy.

(B)     CONTRACTOR shall also carry, for the benefit of CONTRACTOR and its employees, statutory Worker's Compensation Insurance as required by the state or states in which the Work is to be performed. This policy shall include Employers' Liability Insurance with an available limit of not less than $1,000,000.00 per occurrence. CONTRACTOR shall be the Named Insured. Unless prohibited by law, such insurance shall waive subrogation against RAILROAD.

(C)     CONTRACTOR, if required by RAILROAD, shall take out and maintain at its own expense, until Work for is fully completed and accepted by RAILROAD, a policy of Builder's Risk Insurance on an All-Risk coverage basis, in the name of RAILROAD and CONTRACTOR, as their respective interests may appear, in an amount satisfactory to RAILROAD, to cover Work done and material involved, either in place or on the Project site.

(D)     CONTRACTOR, if required by RAILROAD, shall, at the time of execution and delivery, furnish and deliver to RAILROAD a Bid Bond, Performance Bond, and Labor and Material Payment Bond, or Bonds, in the amount of ONE HUNDRED PERCENT (100%) of the agreed contract price (or the mutually agreed total of estimated costs resulting from estimated quantities, and unit bid prices), and Surety thereon, to insure faithful performance by CONTRACTOR of all the covenants and agreements on the part of CONTRACTOR contained in this Contract. Said Bond(s) and Surety shall be subject to the approval of RAILROAD. Said Bond(s) shall pay all premiums for said Bond(s). Said Bond(s) shall remain in force and effect for the full amount or in lesser or increased amounts as may at any time be specified by the Chief during the life of this Contract and any extensions thereof and during any period of warranty or guaranty as to workmanship, material and/or equipment elsewhere provided in this Contract.

(E)    CONTRACTOR shall maintain for its benefit, business Automobile Liability Insurance with available limits of not less than $1,000,000 combined single limits for bodily injury and property damage covering all owned, non-owned and hired vehicles and covering the contractual liabilities assumed herein. CONTRACTOR shall also maintain Boiler and Machinery Insurance covering pressure vessels and machinery and such insurance shall waive subrogation against the RAILROAD. CONTRACTOR shall further provide all other forms of coverage necessary to comply with federal, state or local laws, statutes, ordinances, or regulations.

(F)    If and as required by RAILROAD, CONTRACTOR shall procure and maintain railroad protective liability insurance.

(G)    Proof of the insurance coverage required by this section and copies of the insurance policies shall be submitted to:
Michele Cobb, Contract Coordinator
CSX Transportation, Inc.
500 Water Street, J430
Jacksonville, Florida 32202

The insurance policies required hereby shall provide that the insurance carrier must give RAILROAD notice at least thirty days in advance of cancellation of coverage, of any change in coverage, or of cancellation of the policy. Notwithstanding any provisions of this section, the liability assumed by CONTRACTOR shall not be limited to the required insurance coverage.

22.    EVIDENCE OF INSURANCE:

CONTRACTOR shall send evidence of all required bond and insurance coverage with the signed contract to CSX Transportation, 500 Water Street, J430, Jacksonville, FL 32202, ATTN: Michele Cobb. The evidence of bond and insurance coverage shall be endorsed to provide for thirty (30) days' notice to RAILROAD prior to cancellation or modification of any policy or bond. The Certificate of Insurance shall refer to the liability assumed by CONTRACTOR on the Certificate. Copies of Additional Insured and Waiver of Subrogation endorsements shall be attached to the certificate.

23.    SUPERINTENDENCE:

CONTRACTOR shall give constant and efficient attention to the faithful and diligent prosecution of the Work and during its progress shall be represented at all times at the site of the Work by a competent superintendent.

24.    ORDER AND DISCIPLINE:

CONTRACTOR shall at all times enforce strict discipline and good order among its employees. CONTRACTOR shall not permit the sale, distribution or use of alcoholic beverages, intoxicants, narcotics or other controlled substances at or in the vicinity of the Work site.

25.    NOTICE - HOW SERVED:

(A)    Any notice or other document from RAILROAD to CONTRACTOR that is required or permitted under this Contract shall be deemed served if delivered to the person in charge of the office used by CONTRACTOR, or to CONTRACTOR'S designated representative at or near the Work site, or deposited in the U.S. Mail, with postage prepaid, addressed to CONTRACTOR at its last known place of business.

(B)    Any notice or other document from CONTRACTOR to RAILROAD that is required or permitted under this Contract shall be deemed served if deposited in the U.S. Mail, with postage prepaid, addressed to:
Contract Coordinator
CSX Transportation, Inc.
500 Water Street
Jacksonville, Florida 32202

26.    POINTS AND INSTRUCTIONS:

(A)    CONTRACTOR shall provide reasonable and necessary opportunities and facilities for setting points and making measurements. CONTRACTOR shall not proceed until it has made timely demand upon the Chief for, and has received from the Chief such points and instructions as may be necessary as the Work progresses. Work shall be done in strict conformity with such points and instructions.

(B)    Before commencing Work, CONTRACTOR shall examine and compare the plans and specifications and shall report to the Chief any errors or discrepancies found therein. IF CONTRACTOR, in the course of the Work, finds any discrepancy between the plans and the physical conditions of the locality or any applicable building code or ordinance, or any errors or omissions in Plans or in the layout as given by said points and instructions, it shall be CONTRACTOR'S duty to inform the Chief immediately, and the Chief shall promptly investigate and take whatever corrective action he or she deems appropriate. Any work done after such discovery, until authorized by the Chief, will be done at CONTRACTOR'S sole risk;

27.    PRESERVATION OF STAKES:

CONTRACTOR shall carefully preserve bench marks, reference points, and stakes, and CONTRACTOR shall be responsible for any additional costs resulting from their willful or careless loss or disturbance.

28.    INSPECTION:

All Work and materials shall be open to inspection, acceptance or rejection by the Chief at the site of the Work or at locations removed from the site of the Work. Upon reasonable notice during normal business hours, CONTRACTOR shall provide the Chief with documentation or other satisfactory evidence of calibration of tools. The evidence of calibration must be traceable to the National Institute of Standards and Technology.

CONTRACTOR shall give the Chief reasonable notice prior to starting any new Work and shall provide reasonable and necessary facilities for inspection even to the extent of removing portions of finished Work. In case the involved segment of the Work is found satisfactory, the cost of removal and replacement shall be paid by RAILROAD. None of the Work shall be done outside the agreed regular working hours of 7:00 a.m. to 6:00 p.m. without previous approval of the Chief.

29.   AUTHORITY OF THE CHIEF:

The Chief is authorized to reject or condemn any portion of the Work, or materials used in conjunction with the Work, that do not conform to this Contract. The Chief may require the removal of any tools or equipment determined to be unsafe, defective or inadequate for carrying out the Work, and CONTRACTOR shall, without delay, substitute satisfactory tools or equipment therefor.

30.   DEFECTIVE WORK OR MATERIAL:

(A)   CONTRACTOR shall remove, at its own expense, any portion of the Work, Project, or material rejected by the Chief, and shall rebuild or replace same without extra charge. If CONTRACTOR defaults with respect to this obligation, such corrective action may be performed by RAILROAD at CONTRACTOR'S sole expense. In case the Chief determines that the defect is not of sufficient importance to require CONTRACTOR to rebuild or replace the rejected portion of the Work, Project or material, he or she is hereby authorized to make an offsetting pro rata deduction from the Contract price.
(B)   The Chief's failure to disapprove or reject any portion of the Work, Project, or material shall not be construed as an acceptance of any subsequently found defect.

31.   PATENTED DEVICES:

(A)   If CONTRACTOR makes or uses any patented process, machinery, composition of matter or material, or facility in performing the Work or in supplying materials used in such performance, whether or not the same are required by the terms of the specifications, or if CONTRACTOR makes, uses or furnishes to RAILROAD in performance of this Contract any machine, composition of matter, material, or facility which is patented or which is adapted to perform a patented process, whether or not the same is required by the terms of the Specifications, CONTRACTOR shall satisfy all licensing requirements for its use, and any charges for leases, licenses, privileges or royalties.

(B)   CONTRACTOR, at its sole cost and expense, shall defend, indemnify, and hold harmless RAILROAD against any and all claims, suits, causes of action, judgments, and settlements arising from alleged infringement of patent rights, notwithstanding any approval of such machine, manufacturing process, composition of matter, material, facility, or process by RAILROAD.

32.   CHANGE OF FACILITIES OF OTHERS:

If in the conduct of the Work any temporary changes or alterations in pipeline, sewers, drains, conduits, fences, tracks, power or communication lines, or other facilities of third parties are undertaken, either for the convenience of CONTRACTOR or for performance of the Work, the responsibility for making such changes will rest with CONTRACTOR unless otherwise provided in this Contract. CONTRACTOR shall arrange for such changes to be made at its sole expense.

RAILROAD does not guarantee the completeness or accuracy of the information shown on the plans and specifications regarding utilities. CONTRACTOR shall make its own investigation to verify or determine the existence, nature, and location of all utilities on the site that may interfere with construction before starting the Work. CONTRACTOR shall report to the Chief any omissions or differences from what is shown on the plans and specifications.

Before doing any work which will damage, disturb, or leave unsupported or unprotected any utility line or appurtenance, CONTRACTOR shall notify the owner and make all arrangements for relocating, adjusting, or otherwise maintaining the service of that utility. After relocating, adjusting, or otherwise maintaining the service, CONTRACTOR shall proceed with the Work. RAILROAD will arrange for the relocation of fiber optic cables and RAILROAD utilities at no expense to CONTRACTOR. RAILROAD will endeavor to schedule these relocations to conform with CONTRACTOR'S timetable but such scheduling is not guaranteed.

It shall be CONTRACTOR'S responsibility to protect utilities that are to remain in operation and to take special precautions when transporting or operating heavy equipment over or in the vicinity of these utilities or drainage structures. CONTRACTOR shall be held fully responsible for any damages resulting from its construction operations, and it shall be required to repair, replace, or reconstruct any damaged utilities or drainage structures.

The cost of protecting utilities and drainage structures will not be reimbursed or otherwise paid on a separate basis. Such costs shall be considered incidental to the Contract. No extra compensation or extension of the Date of Completion will be granted to CONTRACTOR for delays caused by utilities not proceeding promptly with its portion of the Work.

33.   RIGHTS OF VARIOUS INTERESTS:

Wherever work being done by RAILROAD personnel or by other contractors is related to the Work covered by this Contract, the scheduling and respective rights of the various interests involved shall be established by the Chief in a manner that will promote the harmonious completion of the various portions of the Work.

34.   ORDER OF COMPLETION; USE OF COMPLETED PORTIONS:

CONTRACTOR shall complete any portion(s) of the Work in such order of time as the Chief may require. RAILROAD shall have the right to take possession of and use any completed or partially completed portions of the Work, notwithstanding the circumstance that the time for completing the entire Work or the involved portion thereof may not have expired; but taking such possession and use shall not be deemed final acceptance of any or all of the Work so taken or used. If such early possession and use increases the cost of the Work, or delays it, CONTRACTOR shall be entitled to extra compensation or an extension of the Date of Completion, or both, as determined by the Chief.

35.    CHANGES:

RAILROAD shall have the right to make any subsequent changes in the nature or scope of the Work, either before or after it commences, and such changes shall in no way affect or negate the obligations of this Contract. If such changes appreciably affect the cost of the Work to CONTRACTOR, it shall so notify the Chief in writing before proceeding with the Work, and costs shall be equitably adjusted by the Chief. However, CONTRACTOR shall not claim additional compensation for anticipated profits.

36.    EXTRA WORK:

(A)    If, in the opinion of the Chief, any additional Work should be done or any additional material furnished that is not currently included, contemplated or classified in this Contract ("Extra Work"), the Chief shall notify CONTRACTOR in writing to proceed with performing or furnishing such Extra Work. RAILROAD may pay for the Extra Work on a lump-sum basis, or on the basis of unit prices, or any other method agreed upon by the Chief and CONTRACTOR. A change order shall be required for any Extra Work that will increase the agreed cost of the Work.

(B)    Bills for Extra Work shall be presented to the Chief at the time of making the first monthly estimate after such Extra Work has been done or furnished, and such bills must be accompanied by a copy of the Chief's notice to proceed with or furnish such Extra Work. No bill or claim for Extra Work shall be allowed or paid unless it is performed or furnished pursuant to written notice from the Chief. CONTRACTOR shall furnish the Chief with reports of all Extra Work, in the number, form and detail prescribed by the Chief.

(C)    Any and all Extra Work shall be governed by this Contract.

(D)    If a dispute arises in which RAILROAD asserts that a particular task or quantity of material falls within the scope of the Work and CONTRACTOR alleges that said task or quantity of material constitutes Extra Work within the terms of this section, CONTRACTOR shall give RAILROAD at least 24 hours notice prior to performing any task or installing any material subject to such a dispute. In its notice that it intends to proceed with the involved task or installation of material notwithstanding such a dispute, CONTRACTOR shall identify with precision the aspects of the task and portions of the material which it considers Extra Work. As soon as practicable after it completes the disputed task or installs the disputed material it deems Extra Work, CONTRACTOR shall provide RAILROAD with a detailed statement showing the costs associated therewith.

37.    QUANTITIES AND UNIT PRICES:

The quantities set forth in the bid proposal are considered approximate and will in no way govern or affect payments for the Work. Such payments will be based upon exact measurements, established facts, and actual unit prices.

38.    DAILY REPORTS AND ACCOUNTING INFORMATION:

(A)    If required by the Chief, CONTRACTOR shall furnish a daily statement of labor, material and equipment, arranged by each item of Work performed and showing hours worked and rates for the various classes of labor.
(B)    Upon completion of the Work, CONTRACTOR shall provide the Chief with a complete list of unit quantities, unit costs and such other information as may be required by RAILROAD in conformity with its accounting requirements.
39.    MONTHLY ESTIMATE:

(A)    Except as provided in Section 4, and/or Exhibit "A", payments for the Work done under this Contract will be made monthly as the Work progresses, so long as the Work is performed in accordance with the provisions of this Contract. The CONTRACTOR, on or about the first day of each month, shall make an estimate of the proportionate value of the work done up to that time for approval by the Chief. The amount of the estimate approved by the Chief, less a retained amount of 10 percent and less previous payments, shall be paid to CONTRACTOR by the 30th day following approval of the estimate by the Chief.

(B)    Work and material included in such monthly estimates shall become the property of CONTRACTOR, provided that: (1) with the exception of the final payment, no estimates given or payments made under this Contract shall be deemed evidence of final performance of this Contract; and (2) no payment shall be deemed an acceptance of defective Work or improper materials.

40.    FINAL ESTIMATE; LIEN RELEASES:

Upon the completion and acceptance of the Work, the CONTRACTOR shall make a final estimate of the value of the Work for approval by the Chief to determine the balance due CONTRACTOR, including the retained percentage, and less previous payments. As a condition precedent to payment of the approved final balance, CONTRACTOR shall furnish to the Chief satisfactory evidence that all payrolls, bills, liens, claims or suits for labor performed or material furnished in connection with the Work have been paid or provided for. CONTRACTOR expressly agrees to defend, indemnify, and hold RAILROAD harmless with regard to any actions, claims, liens or suits arising from CONTRACTOR's failure to fulfill this obligation. CONTRACTOR also expressly agrees to promptly reimburse RAILROAD for any amounts RAILROAD pays to satisfy or settle such action, claims, liens, or suits.

41.    FINAL INSPECTION AND ACCEPTANCE:

When the Work has been completed and the final clean-up performed, CONTRACTOR shall notify the Chief that it is ready for the final inspection. Said inspection will be made within ten days after such notification. If the Work is found by the Chief to be satisfactory, CONTRACTOR will be notified in writing of the RAILROAD's acceptance. Upon receipt of RAILROAD's notice of acceptance, CONTRACTOR shall deliver to RAILROAD a set of "as built" drawings, any applicable warranty documents, and a set of any necessary keys. If the Work is found to be unsatisfactory, CONTRACTOR will be notified that the Work is unacceptable and provided with a list of the defects that must be corrected to make it acceptable.

Acceptance shall be final and conclusive except for latent defects, fraud, or RAILROAD's right under any warranty or guarantee.

CSXT - 00090

42.    SUSPENSION OF WORK:

(A)        RAILROAD may at any time suspend the Work, or any part thereof, by giving not less than five (5) days' written notice to CONTRACTOR. CONTRACTOR shall not suspend the Work, nor any part thereof, without written authority from the Chief. RAILROAD shall not be liable for any damages or losses of anticipated profits resulting from suspension of the Work, or for Work done during the period of suspension. However, if such suspension materially affects the cost of the Work to CONTRACTOR, the CONTRACTOR's payments shall be equitably adjusted by the Chief.

(B)        Once suspended, the Work shall be resumed by CONTRACTOR within ten (10) days after it receives written notice from the RAILROAD to resume the Work. The Date of Completion of the Work shall be extended by a period equal to the period of suspension.

43.    FAILURE OF PERFORMANCE BY CONTRACTOR:

(A)        If in the opinion of the Chief, CONTRACTOR either, (1) fails to complete the Work by the Date of Completion provided for in Section 3, above, and, if applicable, extended pursuant to other provisions of this Contract, or (2) fails to comply with the provisions of this Contract, the Chief may, at his or her option, notify CONTRACTOR in writing to remedy such failure within ten (10) days of the date of such notice (or within seventy-two (72) hours, if rail operating safety is involved). If CONTRACTOR fails to take effective corrective action, RAILROAD may, at its option, terminate this Contract and relet, rebid or reissue the whole or any part of the unfinished Work without notice to CONTRACTOR, or may take possession of CONTRACTOR'S materials and equipment located on the RAILROAD's premises, and employ such forces (including other contractors) as may be necessary to finish all or any part of the Work.

(B)        If the whole or any part of the Work is relet, rebid or reissued, as provided for in Section 43(A), above, CONTRACTOR shall promptly reimburse RAILROAD for the full cost to RAILROAD of performing the Work under any new agreement plus ten percent (10%) for overhead expense. CONTRACTOR shall be credited with the amount RAILROAD would have paid CONTRACTOR for the involved Work.

(C)        In the event of either type default under Section 43(A), above, CONTRACTOR shall receive no further payment until any remedial action has been completed, the Work is finished, and/or RAILROAD has received any reimbursement due pursuant to Section 43(B), above. If the amount credited to CONTRACTOR exceeds the amount charged, the difference shall be paid by RAILROAD to CONTRACTOR.

44.    TERMINATION WITHOUT FAULT OF CONTRACTOR:

RAILROAD shall have the right at any time and at its sole discretion to terminate this Contract upon reasonable notice to CONTRACTOR. In such event, CONTRACTOR shall be entitled to the full amount of the estimate for the Work done by it under this Contract up to the time of such termination, including any retained percentage. RAILROAD shall pay the CONTRACTOR the amount due it after it receives CONTRACTOR's waivers or release of liens from all subcontractors and suppliers as provided for in Sections 40 and 47. CONTRACTOR shall be reimbursed by RAILROAD for such expenditures for which, in the judgment of the Chief, the CONTRACTOR has not otherwise been compensated, and as are required in preparing for and moving to and from the Work. In such cases, the parties intend to make an equitable settlement.

45.    REMOVAL OF EQUIPMENT:

Upon completion or termination of the Work, CONTRACTOR shall promptly remove all of its equipment, material, tools and supplies from the premises of RAILROAD. RAILROAD shall have the right to move such equipment, material, tools and supplies at the sole expense of CONTRACTOR upon CONTRACTOR's default with respect to this requirement.

46.    CLEANING UP:

During the course of the Work, CONTRACTOR shall, at its own expense, remove from RAILROAD's property and from all public and private property, all temporary structures, equipment, rubbish and waste materials resulting from its operations. Prior to final acceptance, the premises occupied by the Work shall be cleaned up and left in a neat and orderly condition, satisfactory to the Chief.

47.    SUBCONTRACTORS AND LIENS:

(A)        CONTRACTOR shall pay all employees, subcontractors, suppliers, laborers, equipment lessors and materialmen, employed or contracted in the Work, in a timely manner. CONTRACTOR shall immediately discharge any liens filed against RAILROAD or RAILROAD property in connection with the Work and shall defend and indemnify RAILROAD and the RAILROAD's property from such liens and from costs to satisfy, discharge or remove same.

(B)        Prior to RAILROAD's final payment to CONTRACTOR, and as a condition precedent to said final payment, CONTRACTOR shall furnish to RAILROAD written Lien Releases and/or Waivers from all labor, material or equipment suppliers or subcontractors used in performance of the Work.

48.    WITHHOLDING OF PAYMENT:

If CONTRACTOR fails to pay all obligations for labor, materials or supplies furnished in connection with the Work, or if any liens, claims or demands arising out of or in connection with the Work shall be outstanding at the time any payment may be due hereunder, or if any claims arising out of or in connection with CONTRACTOR'S performance under this Contract are made against RAILROAD or RAILROAD's property by any person other than CONTRACTOR, or, if the Contract is relet as provided for in Section 43, above, or, if in the opinion of the Chief, CONTRACTOR is not proceeding with the Work in accordance with the provisions of this Contract, RAILROAD shall have the right, at its option, to (1) withhold out of any payments, final or otherwise, such sums as the Chief may deem ample to protect RAILROAD against delay or loss, or to assure payment of claims of third persons as agent for CONTRACTOR, or (2) to apply such sums in such manner as the Chief may deem proper to secure such protection or to satisfy such claims. Such application shall be deemed payment for CONTRACTOR'S account.

49.    OFFSET PROVISIONS:

RAILROAD shall have the right to offset and apply any sums payable to CONTRACTOR under this Contract in payment of any liabilities of CONTRACTOR or its subcontractor(s) to RAILROAD for freight charges, equipment rental, furnishing labor, materials or supplies provided, or for any other charges of RAILROAD related to this Contract.

50.    PRECEDENCE:

The provisions of this Contract, including those appended or incorporated by reference, shall take precedence over any other papers, plans and specifications. All Work that may be called for in either the specifications or the plans, but not necessarily both, shall be performed by CONTRACTOR as if described in both. Should any work or material be required that is not denoted in the specifications or plans, but that is nevertheless necessary for the proper fulfillment of the parties' intent, CONTRACTOR is to consider such work or material to be implied and required and shall perform such work and furnish such material as if it were expressly delineated or described. As the Work progresses, additional plans may be furnished by RAILROAD to more precisely illustrate the manner in which the plans and specifications are to be carried out. Such additional plans shall be deemed essential parts of this Contract and binding on the parties. Figures on plans, unless obviously incorrect, shall in all cases take precedence over measurements by scale, detailed plans over small scale plans, and full size detailed plans over all other plans. The decision of the Chief shall be final as to the interpretation of the plans and specifications. The plans and specifications are complementary, and in the case of conflicting requirements, plans shall govern over specifications.

Notwithstanding the order of precedence set forth above, CONTRACTOR shall ask the Chief to resolve, interpret, or clarify any perceived conflicts, errors, or ambiguous provisions in this Contract and the other documents governing the work.

51.    BRIBES PROHIBITED:

CONTRACTOR represents that it has not and will not exchange any gift, rebate, influence or other compensation (excluding nominal business entertainment or gifts) with any official, employee, representative or agent of RAILROAD or any of its affiliated companies. CONTRACTOR further represents that none of its officials or employees is employed by RAILROAD or any of its affiliated companies. CONTRACTOR agrees to immediately notify RAILROAD if CONTRACTOR becomes aware of changes in the foregoing representations. CONTRACTOR understands that RAILROAD has the right to rely upon the foregoing representations and that failure to honor these representations may result in a default of this Contract.

52.    AUDIT:

CONTRACTOR agrees that RAILROAD, through its employees or authorized representatives, may audit CONTRACTOR's facilities and its records during normal business hours to verify CONTRACTOR's compliance with this Contract. CONTRACTOR further agrees that, for at least a three year period computed from the end of the first calendar year following the date of such record, it shall retain, without limitation, the following records: (1) payroll and/or accounting records, including social security numbers and labor classifications, time sheets, canceled checks or signed cash receipts of employees or agents performing work pursuant to this Contract, (2) invoices or inventory records for materials used in CONTRACTOR's performance under this Contract, (3) all documents regarding any Work performed by a subcontractor or agent and (4) all documents in CONTRACTOR's possession regarding its compliance with this Contract.

53.    CANCELLATION UPON NOTICE:

Either RAILROAD or CONTRACTOR may cancel this Contract at any time and upon written notice if performance of its contractual obligations is inconsistent with any labor claim, arbitration award, or court decision.

54.    ABANDONMENT OR DISCONTINUANCE OF SERVICE:

CONTRACTOR acknowledges that RAILROAD and its rail affiliates have the right to seek abandonment of, or a discontinuance of service over their trackage. If the trackage serving the location at which the Work is to be performed is abandoned or if service is discontinued over that trackage, this Contract may be canceled upon written notice by either party after the service date of the order or exemption authorizing the abandonment or discontinuance.

55.    RELATIONSHIP TO OTHER CONTRACTS:

It is possible that the scope of this Contract may overlap with the scope of other contracts or agreements between the parties. In that event, the documents will be read, to the extent possible, as being compatible with each other, and not in contradiction, with the more specific language controlling.

56.    EQUAL EMPLOYMENT:

RAILROAD policy provides equal opportunities in employment without regard to race, color, religion, sex, age, or national origin, and it is committed to employing and advancing qualified disabled veterans, handicapped persons, and Vietnam era veterans. RAILROAD further complies with the requirements placed on government contractors and subcontractors by Executive Order 11246, Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974, and Section 503 of the Rehabilitation Act of 1973. Contractor hereby agrees that it shall also comply with these same Executive Orders, Laws, rules and regulations as applicable.

57.    GENERAL PROVISIONS:

(A)    This Contract shall not be construed so as to provide any benefit for any third person.

(B)    This Contract shall inure to the benefit of and be binding upon the legal representatives, successors and assigns of the parties.

(C)    This Contract and the attached Exhibit or addenda contain the entire understanding between the parties hereto

(D)     This Contract is executed under current interpretations of applicable federal, state, county, municipal or other local statutes, ordinances, regulations, and laws.  However, each separate division (paragraph, clause, item, term, condition, covenant or agreement) hereof shall have independent and severable status for the determination of legality, so that if any separate division is determined to be void or unenforceable for any reason, such determination shall have no effect upon the validity or enforceability of each other separate division, or any combination thereof.

(E)     This Contract shall be construed and governed by the laws of the State of Florida, exclusive of choice of law.

(F)     If any provision or any part of a provision of this Contract shall be finally determined to be superseded, invalid, illegal, or otherwise unenforceable pursuant to any applicable law, ordinance, rule or regulation, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provision or parts of the provision of the Contract, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

IN WITNESS WHEREOF, the parties hereto have executed this Contract in two original counterparts, each of which shall be deemed an original agreement but which shall be collectively considered one Contract, as of the day and year first above written.

ATTEST:                                                                    CSX TRANSPORTATION, INC.

_____                         By: _____

Date: _____                  Title: _____

ATTEST:

_____                         CONTRACTOR
                                                                              NIAGARA ERECTING, INC.

Date:   3/7/13                                                        By: _____

                                                                              Title:   David F. Clark, President

**EXHIBIT A**

CSX Transportation, Inc.
DESCRIPTION OF SERVICES

**SERVICES:**    Labor & equipment for removal of bridge structures as directed by Engineer Signal Construction

**EQUIPMENT:**    90 ton crane with operator & oiler
Counterweight truck
Ironworker foreman
Two Ironworkers
Rigging

**PAYMENT TERMS:**    Net 30

**RATES:**    Per day: $5K (8 hour day, Monday through Friday)

Overtime Rate
Each hour over 8 hours Monday through Friday: $900/hour
Saturday Rate: $900/hour
Sunday Rate: $1100/hour

If extra crew is required, a one-time rigging rate of $1500 will be added

The rates are fixed through the Term of this Contract.

+ SALE TAX
Per Diem

CSXT - 00094