UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ALAN WALTER

                Plaintiff,              **STATEMENT OF**
                                                    **MATERIAL FACTS**
  -vs-

                                                       Docket No.: 1:19-cv-01583-WMS-JJM

CSX TRANSPORTATION, INC.

                Defendant.
───────────────────────────────────────────

      Plaintiff, Alan Walter, by and through his attorneys LoTempio P.C. Law Group, pursuant to Federal Rules of Civil Procedure § 56(c)(1) hereby provides his Statement of Material Facts in support of his Motion for Summary Judgment on his New York Labor Law §§ 240(1) and 241(6) claims.

## IDENTITY OF PARTIES

      1.     Niagara Erecting, Inc., entered into a construction contract with CSX Transportation, Inc. to remove certain bridge structures from the CSX right of way (the "Buffalo Terminal Project").  *See* Exhibit M; Exhibit H, 23:13–15.  Niagara Erecting, Inc. and Clark Rigging are affiliated companies.  *See* Exhibit H, 49:10–14.

      2.     Plaintiff Alan Walter ("Plaintiff") was employed by Clark Rigging and Rental Corporation ("Clark Rigging") as a truck driver, and involved in portions of the Buffalo Terminal Project.  *See* Exhibit G, 35:12–16, 51:3–10.

## THE BUFFALO TERMINAL PROJECT

      3.     Phase Three of the Buffalo Terminal Project was set to begin on July 23, 2017, which included the removal and replacement of certain CSX railroad bridges.  *See* Exhibit H, 18:8–11.

1

4. Pursuant to the contract between CSX Transportation, Inc. and Niagara Erecting, Inc., Clark Rigging was to supply and use certain cranes in connection with Phase Three and the removal and replacement of the bridges, including the 600-crane. *See* Exhibit H, 20:18-25, 21:1, 23:13-15, 25:16–20, 28:3–5.

5. Also, pursuant to the contract between CSX Transportation, Inc. and Niagara Erecting, Inc. (affiliated with Clark Rigging), CSX was to "provide the premises upon which the [w]ork" was to be done. *See* Exhibit M.

6. Prior to the July 23, 2017 start date, Clark Rigging began assembly of a 600-crane on July 21, 2017, in an open lot owned by CSX. *See* Exhibit D, 6:2–10; Exhibit G, 57:16–18; Exhibit H, 26:17–23, 28:6–17, 28:18–21.

## ASSEMBLY OF 600-CRANE AND INCIDENT

7. On the morning of July 21, 2017, Plaintiff picked up a trailer from the Clark Rigging Lockport lot containing a fully assembled small crane, which he brought to the CSX job site. *See* Exhibit G, 64:16–22; 65:23–25. The small crane was on the Lockport lowboy trailer. *See* Exhibit G, 63:10–11.

8. After Plaintiff delivered the small crane, he was instructed to go to the green-space to help with the assembly of the 600-crane. *See* Exhibit G, 69:17–21.

9. The Defendant CSX Transportation, Inc. ("CSX" or "Defendant"), through its representative directed the location to be used by Clark Rigging in order to set up the required equipment for the work. *See* Exhibit H, 27:8-16, 28:6-21.

10. CSX is the owner of the property upon which the bridge structures were being removed, as well as the owner of certain green-space where a 600-crane was being assembled in connection with the project. *See* Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit H, 28:18–21.

11. The 600-crane was intended to be used for Phase Three of the Buffalo Terminal Project. *See* Exhibit E, 64:9–21.

12. There were about nine or ten trailers in the green-space containing pieces for the 600-crane. *See* Exhibit E, at 26:17–21; Exhibit G, 68:22–25, 69:1–5.

13. During the assembly, Plaintiff's role was to hold a rope/tag-line to steer and guide the winch while it was being lifted off of the trailer, which was considered standard procedure. *See* Exhibit D, at 15:8–17; Exhibit E, 66:10–14; Exhibit G, 106:11–14.

14. The subject trailer with the winch came directly from Syracuse, was on a Syracuse lowboy trailer, and was delivered to the jobsite by a Syracuse driver. *See* Exhibit F, 15:3–11, 18:12–15.

15. The winch was located in the middle of the Syracuse lowboy trailer, favoring the back end. *See* Exhibit E, 13:2–7; Exhibit G, 89:17–22.

16. Near the front of the lowboy trailer, there is typically an opening where chains are kept when they are not in use; this opening on the Syracuse lowboy trailer was visible to the Clark Rigging employees. *See* Exhibit D, 27:10–15; Exhibit G, 117:3–5.

17. Portions of the lowboy trailer deck could not be seen because the piece of equipment was covering it. *See* Exhibit D, 19:17–23, 20:1; Exhibit E, 14:3–9; Exhibit G, 123:20–22.

18. None of the Clark Rigging employees knew that there was a missing plank of wood on the Syracuse lowboy trailer underneath the piece of equipment. *See* Exhibit E, 68:4–8; Exhibit G, 123:16–19.

19. In the afternoon of July 21, 2017, Clark Rigging employees began assembly of the 600-crane. *See* Exhibit D, 12:16–18; Exhibit G, 101:12–20.

20. The Clark Rigging employee operating the small crane lifted the winch between a foot and three feet off of the lowboy trailer into the air. *See* Exhibit E, 14:14–23; Exhibit G, 115:1–4.

21. As the winch was being lifted by a smaller crane, Plaintiff was holding the rope/tag-line, guiding it; as he was walked three to five steps with the winch, he stepped into the portion of the lowboy trailer deck that was missing a plank and fell through the trailer. *See* Exhibit D, 24:13–19; Exhibit E, 17:3–9; Exhibit G, 118:17–19.

22. The distance from the ground to the deck of the Syracuse lowboy trailer was about 18 inches. *See* Exhibit D, 32:4–7; Exhibit G, 118:19–24.

23. The lowboy trailer deck is made up of two by twelve wooden planks. *See* Exhibit G, 84:15.

24. The hole on in the trailer deck measured about twelve inches wide and three to four feet long. *See* Exhibit G, 97:2-9.

25. Lowboy trailer decks are considered "walking-working surfaces." *See* Exhibit F, 25:9–13.

DATED:   Buffalo, New York
         September 14, 2021

**LOTEMPIO P.C. LAW GROUP**

By: /s/BOYD L. EARL, ESQ.
    Boyd L. Earl, Esq.
    *Attorneys for Plaintiff*
    181 Franklin Street
    Buffalo, New York 14202
    Phone: (716) 855-3761
    Email: boydearl@gmail.com

5

TO:   Philip Gulisano, Esq.
NASH CONNORS, P.C.
*Attorneys for Defendant*
344 Delaware Avenue, Suite 400
Buffalo, New York 14202