UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALAN WALTER,

                        Plaintiff,          Civil Case No.:
v.                                           1:19-cv-01583-WMS

CSX TRANSPORTATION, INC.,

                        Defendant.
_____

## RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant CSX Transportation, Inc. ("CSX") submits this Statement of Material Facts in support of its motion for summary judgment, pursuant to Local Rule 56(a)(1):

### PROCEDURAL HISTORY

1. On or about October 15, 2019, plaintiff Alan Walter (hereinafter "plaintiff") commenced this personal injury action by filing a Summons and Verified Complaint in the New York Supreme Court, County of Erie. **Exhibit A.**

2. Plaintiff alleges that on July 21, 2017, he was caused to sustain personal injuries during the course of his employment for Clark Rigging & Rental Corporation (hereinafter "Clark Rigging") in connection with certain construction/demolition work performed at or near Green Street and Reiman Street in Buffalo, New York. **Exhibit A**, at ¶¶ 12-15.

3. On November 22, 2019, defendants CSX Transportation, Inc., CSX Corporation, and CSX Intermodal Terminals filed a Notice of Removal to the United States District Court for the Western District of New York on the basis of diversity jurisdiction. **Exhibit B.**

4. On or about December 27, 2019, defendant[1] CSX served an Answer to the Complaint. **Exhibit C.**

5. On or about October 13, 2020, plaintiff served a Response to CSX's First Set of Interrogatories. **Exhibit D.**

6. In the Response, plaintiff alleges that he suffered personal injuries on July 21, 2017 during the course of his employment for non-party Clark Rigging. **Exhibit D**, at p. 2.

7. Plaintiff further responded as follows: (i) Clark Rigging was hired to demolish and replace a railroad bridge; (ii) a "600[-ton] crane" was being delivered to the job site via a tractor and lowboy trailer; (iii) the deck of the trailer was missing a plank of wood; (iv) the missing plank created an opening on the deck of the trailer; (v) plaintiff was assisting to control a load with a tagline as it was being lifted off the trailer; and (vi) plaintiff "stepped forward [on the deck of the trailer] and fell through the opening [created by the missing plank of wood], a distance of approximately one (1) to two (2) feet, striking his right knee." **Exhibit D**, at pp. 2, 3.

8. Plaintiff asserts claims sounding in negligence and pursuant to New York Labor Law §§ 200, 240(1), and 241(6). In support of plaintiff's New York Labor Law § 241(6) claim, plaintiff alleges violations of Industrial Code sections 23-1.7; 23-1.16; 23-1.22; 23-1.32; and 23-14 [sic]. **Exhibit D**, at pp. 3, 4, 5.

9. John Clark of non-party Clark Rigging gave deposition testimony on October 21, 2020. **Exhibit E.**

10. Plaintiff gave deposition testimony on February 9, 2021. **Exhibit F.**

11. David Pirro of defendant CSX gave deposition testimony on February 10, 2021. **Exhibit G.**

---

[1] By Stipulation of Voluntary Dismissal filed December 12, 2019, CSX Corporation and CSX Intermodal Terminal, Inc. were dismissed from the underlying action, leaving only CSX Transportation, Inc. as a defendant.

2

## FACTS

**DEPOSITION OF JOHN CLARK:**

12. John Clark, an operating engineer, has been employed by Clark Rigging since approximately 1985. **Exhibit E**, at p. 5.

13. On the date of the alleged accident, July 21, 2017, Clark Rigging was assembling a 600-ton crane in connection with a project that it was performing for CSX. **Exhibit E**, at p. 6.

14. The scope of the project included replacing lights over CSX tracks. **Exhibit E**, at p. 6.

15. Clark Rigging was scheduled to begin the actual scope of work on July 22, 2017, and was assembling the 600-ton crane on site the day before. **Exhibit E**, at pp. 6, 7.

16. On July 21, 2017, there were two cranes at the site – the 600-ton crane that was in the process of being assembled and a smaller crane that was being used to assist with the assembly process. **Exhibit E**, at pp. 7, 8.

**DEPOSITION OF PLAINTIFF:**

17. From approximately 2013 to 2017, plaintiff was employed with Clark Rigging as a truck driver. **Exhibit F**, at pp. 25, 34, 35.

18. The general business of Clark Rigging included crane rentals. **Exhibit F**, at p. 38.

19. Plaintiff drove a Peterbilt truck (also referred to as a "tractor") that was owned by Clark Rigging. **Exhibit F**, at pp. 35, 36.

20. The tractor pulled flatbed trailers. **Exhibit F**, at p. 37.

21. Clark Rigging owned approximately 20 flatbed trailers, including two lowboy trailers. **Exhibit F**, at pp. 40, 42.

22. Plaintiff's job duties included transporting cranes and crane components to work sites and assisting with the setup of the cranes. **Exhibit F**, at pp. 38, 46.

23. Clark Rigging provided plaintiff with safety training. **Exhibit F**, at p. 47.

24. As a part of the training, plaintiff was required to review various materials, including relating to different types of rigging, and plaintiff was tested on the materials. **Exhibit F**, at p. 47.

25. Plaintiff received certificates from Clark Rigging for completing the training. **Exhibit F**, at p. 47.

26. On July 20, 2017 (the day before the alleged accident), plaintiff assisted with the loading of a 65-ton "smaller crane" onto a lowboy trailer. **Exhibit F**, at pp. 63, 64.

27. The next morning, on July 21, 2017, plaintiff drove the tractor and attached lowboy trailer (and 65-ton crane) to a location in Buffalo and dropped off the crane to John Clark. **Exhibit F**, at pp. 63, 65, 66, 67.

28. Next, plaintiff dropped off the empty lowboy trailer at a staging area in Sloan, NY, and then proceeded back to where the 600-ton crane was being assembled. **Exhibit F**, at pp. 68, 69, 71.

29. A number of Clark Rigging employees were there, including John Clark and Bill Mersman, the operator of the smaller crane being used to assist with the assembly of the 600-ton crane. **Exhibit F**, at pp. 71, 73, 147.

30. After assisting with the attachment of the boom to the 600-crane, plaintiff drove his tractor back to the yard to retrieve another lowboy trailer (one that already had a winch on it) and then returned with the tractor, lowboy trailer, and winch to the site. **Exhibit F**, at pp. 73-77, 83, 94, 101.

4

31. Upon arriving back at the site, plaintiff exited his tractor and unchained the winch from the lowboy trailer. **Exhibit F**, at p. 105.

32. The lowboy trailer was approximately 24 to 26 feet long and 8 to 9 feet wide, "more towards eight foot [wide]." **Exhibit F**, at pp. 88, 89.

33. William Mersman of Clark Rigging was operating the smaller crane, and the boom of the smaller crane was attached to the winch. **Exhibit F**, at pp. 106, 107.

34. Also, John Clark tied a tagline (a piece of rope) to the winch. **Exhibit F**, at p. 106.

35. While standing on the wooden deck of the lowboy trailer, plaintiff picked up the tagline. **Exhibit F**, at pp. 110, 114.

36. The height of the wooden deck on which plaintiff was standing was approximately "a foot, foot-and-a-half" above the ground. **Exhibit F**, at pp. 110, 117.

37. The winch was initially hoisted a few inches off the trailer platform, during which time plaintiff did nothing with the tag line, which remained loose. **Exhibit F**, at p. 114.

38. As the winch started to move as it was being hoisted by the smaller crane, plaintiff proceeded to walk on the lowboy trailer deck. **Exhibit F**, at p. 116.

39. Plaintiff described the accident as follows:

> Q: So describe for me what happened as you're following the winch.
>
> A: I'm walking with it, watching them guys, watching the winch, and I took the three to five steps, went down into the hole. I whacked my right knee.

**Exhibit F**, at p. 118.

40. Plaintiff denied that he slipped or tripped and, instead, confirmed that he stepped with his right foot directly into the opening in the deck of the lowboy trailer. **Exhibit F**, at pp. 119, 126.

41. Plaintiff's left foot remained on the deck of the trailer as plaintiff's right foot remained in the opening only "a split-second." **Exhibit F**, at p. 132.

42. Plaintiff's right foot "went in and out" of the opening and he "kept going." **Exhibit F**, at p. 144.

43. Plaintiff did not let go of the tag line, continuing performing his task, and the winch was hoisted to the 600-ton crane. **Exhibit F**, at pp. 132, 133, 144.

44. At all times the winch moved steadily and as intended, and nothing went wrong with the tag line either. **Exhibit F**, at p. 126.

45. At his deposition, plaintiff authenticated three photographs of the lowboy trailer that he took on the date of the accident before leaving the scene. **Exhibit F**, at pp. 103, 104; **Exhibit H**.

46. Plaintiff also marked with an "X" the exact location where he stepped with his foot into the opening in the trailer platform that had existed due to the missing plank. **Exhibit F**, p. 120; **Exhibit I**.

47. The entire process of setting up the crane was being handled by Clark Rigging; CSX, on the other hand, was not involved. **Exhibit F**, at pp. 77, 78.

48. Plaintiff did not see any CSX employees at the site. **Exhibit F**, at p. 102.

49. Plaintiff had no interactions with anyone from CSX. **Exhibit F**, at p. 129.

50. Plaintiff's supervisor was from Clark Rigging and plaintiff received all of his supervision, direction, and control from Clark Rigging, not CSX. **Exhibit F**, at pp. 128, 129.

51. CSX did not train plaintiff or any other Clark employees. **Exhibit F**, at p. 128.

52. No one from CSX ever told plaintiff what to do. **Exhibit F**, at p. 102.

53. John Clark of Clark Rigging made all of the decisions regarding each step to take at the site. **Exhibit F**, at p. 77.

54. Plaintiff does not believe that CSX knew, or could have ever known, about the missing plank in the deck of the lowboy trailer. **Exhibit F**, at p. 127.

55. No one from CSX conducted a visual inspection of the lowboy trailer prior to the alleged accident. **Exhibit F**, at p. 127.

56. Plaintiff believes that John Clark was the person who would have loaded the winch onto the lowboy trailer. **Exhibit F**, at p. 129.

57. No one from CSX witnessed the alleged accident. **Exhibit F**, at pp. 127, 146.

**DEPOSITION OF DAVID PIRRO:**

58. Mr. Pirro, Director of Signal Construction at CSX, testified that the work being performed by Clark Rigging on the date of the alleged accident was part of the CSX positive train control ("PTC") project. **Exhibit G**, at pp. 6, 13, 15.

59. The project included the removal and replacement of certain bridges. **Exhibit G**, at p. 18.

60. "CP436" was the specific bridge located in the area of the alleged accident. **Exhibit G**, at p. 19.

61. Mr. Pirro did not know what kind of crane Clark Rigging was going to use in connection with its scope of work and also had no involvement in the selection of the particular crane. **Exhibit G**, at pp. 27, 28.


62. No one from CSX inspected the vehicles being used by Clark Rigging to transport its crane to the subject location. **Exhibit G,** at p. 42.

63. On July 21, 2017, CSX did not monitor Clark Rigging's assembly of its crane and had nothing to do with the crane set up. **Exhibit G,** at pp. 31, 34.

64. Mr. Pirro testified that he "didn't really get involved again because that's got nothing to do with us." **Exhibit G,** at p. 33.

Dated: September 15, 2021

Respectfully submitted,

NASH CONNORS, L.P.

*/s/ Philip M. Gulisano*

Philip M. Gulisano, Esq.
Attorneys for Defendant
344 Delaware Avenue, Suite 400
Buffalo, New York 14202
(716) 842-4121