UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALAN WALTER

                Plaintiff,                    **AFFIRMATION IN OPPOSITION TO MOTION**

  -vs-

                                            Docket No.: 1:19-cv-01583-WMS-JJM

CSX TRANSPORTATION, INC.

                Defendant.
_____

        BOYD L. EARL, ESQ., hereby affirms under penalty of perjury:

        1.      I am an attorney at law duly licensed to practice in the Courts of the State of New York, and am associated with the law firm LoTempio P.C. Law Group, 181 Franklin Street, Buffalo, New York 14202.

        2.      I am the attorney of record for Alan Walter, the Plaintiff in the above-captioned action. As such, I am fully familiar with the facts and circumstances set forth herein.

        3.      I respectfully submit this Affirmation in opposition to Defendant's Motion for Summary Judgment.

        4.      This action arises from an accident which occurred on or about July 21, 2017, wherein Plaintiff sustained serious and permanent injuries as a result of Defendant's negligence and violation of New York State labor laws.

        5.      Plaintiff commenced an action against CSX Transportation, Inc., CSX Corporation, and CSX Intermodal Terminals, Inc., in New York State Supreme Court by filing a Summons and Complaint in the Erie County Clerk's Office on October 15, 2019, bearing the Index Number: 813653/2019. A copy of the Summons and Complaint is annexed to Defendant's Motion for Summary Judgment as **Exhibit A**.

6. Plaintiff subsequently filed a Motion for Summary Judgment on September 14, 2021. A full copy of Plaintiff's Motion for Summary Judgment and supporting documents are indexed at **Dkt. Number 30**. However, in order to ensure those papers are considered on appeal, annexed is a copy attached as **Exhibit 4**.

7. Defendant filed their Motion for Summary Judgment on September 15, 2021, arguing the accident was not caused by the required elevation risk under Labor Law 240(1), and that Industrial Code §23-1.7 is not applicable. **Dkt. Number 32**.

8. It is respectfully submitted that the proof obtained during discovery in the herein matter shows that the Defendant did violate New York State Labor Laws §§ 240(1) and 241(6) and Industrial Code § 23-1.7, causing Plaintiff's injuries.

9. As a result, Defendant has not met its burden of proof with respect to their motion for summary judgment and the herein motion must be denied.

10. CSX Transportation, Inc. and Niagara Erecting, Inc. (affiliated with Clark Rigging) entered into a Construction Contract on March 7, 2013 to "remove bridge structures from CSX right of way." A copy of the construction contract entered into by CSX Transportation, Inc. and Niagara Erecting, Inc. attached hereto as **Exhibit 1**.

11. At an examination before trial conducted on October 21, 2020, non-party witness John Clark testified as follows:

- He is the operating engineer at Clark Rigging, and has worked there since June of 1985 (5:17-21)

- July 21, 2017, they were assembling a 600-ton crane to use to replace the lights over the CSX train tracks (6:2-10)

- The crane was being assembled the day before the project was set to start, which would have been July 22, 2017 (7:1-5)

- They were moving counterweights off of the trailer (8:8-10)

- Plaintiff was a truck driver, and on the day of the accident, he drove the truck and backed the counterweight into the smaller crane (10:17-20)

- He was about 30 feet away from the lowboy trailer at the time of the accident (11:20-22)

- Accident happened after lunch (12:16-18)

- As standard procedure, when counterweights are being lifted off the trailer, someone would be holding a rope or tagline to steer the piece up until it could be attached to the crane (15:8-17)

- The only portion of the lowboy trailer that could be seen were the parts that were not covered by the counterweight (19:17-23, 20:1)

- Out of the corner of his eye, he saw Plaintiff's foot go into the hole where the missing plank was (24:13-19)

- There's an opening at the front of the trailer where chains are placed when they are not being used (27:10-15)

- Lowboy wells are typically 26 feet long (30:2-5); the counterweight is typically 17 feet long (30:16-17)

- The surface of the lowboy trailer is about 18 inches from the ground (32:4-7)

A complete copy of the transcript of John Clark is annexed to Defendant's Motion for Summary Judgment as **Exhibit E**.

12. At an examination before trial conducted on October 21, 2020, non-party witness William Mersmann testified as follows:

- Started working for Clark Rigging in 1999 as a crane operator (6:10-19)

- The July 21, 2017 project was for the railroad, for which Clark was hired to change out old light bars across the rail track, traffic control (7:18-21)

- His only job on the project was to put the 600-crane together (8:3-6, 8:11-13)

- The job site was owned by CSX Transportation (9:5-7)

- A 600-ton winch was on the trailer (10:7-8)

- The truck driver usually takes the chain binders off of the winch (11:4-7)

- Plaintiff was assisting in hooking up the rigging so the winch could be lifted (11:13-20)

- The winch was located near the back of the trailer (13:2-7); also in the same position where the missing plank was (13:18-23)

- They were all surprised when the accident happened, he could not see the missing plank prior to the accident (14:3-9)

- Plaintiff was walking forward towards the missing plank (17:7-9)

- There were about nine trailers that had parts for the 600-ton crane (26:17-21)

- Prior to Plaintiff bringing the winch to the site, it was loaded onto the trailer somewhere else (34: 15-20)

- The load was in control as Plaintiff was walking with it (63:14-19)

- He saw Plaintiff drop into the hole (57:22-58:2)

- All of the equipment on the job site (e.g., the crane parts) was being used for the larger project (64:9-21)

- It is standard procedure for someone to help guide equipment off of the trailer (66:10-14)

- No one knew about the missing plank on the trailer, because if they had seen it, they would have brought it to people's attention (68:4-8)

A complete copy of the transcript of William Mersmann is annexed hereto as **Exhibit 2**.

13. At an examination before trial conducted on October 21, 2020, non-party witness Richard Rydza testified as follows:

- He was the risk safety manager at Clark Rigging (7:1-2)

- He was not on the job site the day Plaintiff was injured, but came to the CSX job site after he learned about the incident (8:5-11)

- Clark Rigging has a contract to remove all of the old towers for CSX, and the crane was being assembled to do that job (8:14-18)

- He was called later in the afternoon on July 21, 2017 regarding Plaintiff's accident (10:1-2)

- The trailer with the missing plank came from Syracuse, and he had put a memo out noting that he did not want defective flatbeds coming into the area (14:2-11)

- The crane would have been on the Syracuse trailer, driven by a Syracuse driver directly to the CSX job site (15:3-11, 18:12-15)

- When inspecting a trailer, it may be difficult to see the bed of the trailer if there is a crane on it, "you're not going to see what's on the decking under it sometimes." (24:13-19)

- Trailer decks are considered walking-working surfaces (25:9-13)

- He was told Plaintiff was holding onto a tagline as a piece of equipment was in the air, and as he was walking backwards he fell (28:18-22)

- Plaintiff was focusing on the piece of equipment because it had to be properly guided (29:5-6)

A complete copy of the transcript of Richard Rydza is annexed hereto as **Exhibit 3**.

14. At an examination before trial conducted on February 9, 2021, Plaintiff Alan Walter testified as follows:

- Attended USA Training Academy for truck driving in approximately 1988 (16:19-22); program included training for pre-trip inspections, which is an inspection of the tractor-trailer before departing (17:19-25)

- Worked for Clark Rigging from 2013 to 2017 as a truck driver (35:12-16)

- He would drive the same Peterbilt truck, unless there was something wrong with it during his pre-trip inspection (35:19-25; 36:1-3)

- Typically transported parts of cranes to job-sites (38:22-24)

- When he goes to hook-up the trailers, they're mostly already loaded (40:9-13)

- Clark Rigging had two low-boy trailers (41:12-16), one in Lockport, one in Syracuse (41:18-23)

- Certain cranes needed to be assembled on site – 300, 400, and 500 ton cranes (45:2-5)

5

- Aside from truck driving, other responsibilities he has at Clark included helping set up the crane, unchain the load, hook up counterweights, help set up outriggers (46:8-13); assisted with removal of counterweights from the lowboy trailer (48:22-25)

- Removal of the counterweights is considered a dangerous job, but Clark employees would watch out for each other's safety (49:4-11)

- Was on CSX property a couple months before the July 21, 2017 accident, in the Broadway area (51:3-10); they were dismantling bridge lights over the tracks and dismantling the bridges, he would transport the crane counterweights down the line (51:16-24)

- First learned he was going to take a trailer to CSX the morning of the accident, July 21, 2017 (57:16-18)

- At the time of the accident, he was on the Syracuse lowboy (which was in lesser shape than the Lockport lowboy) (63: 10-11); was not involved in loading the Syracuse lowboy (63:12-15)

- Inspected the Lockport lowboy, which had a smaller crane on it, i.e., the crane was not broken down into pieces, it was fully intact (64:16-22)

- Drove the Lockport lowboy to the CSX site (65:23-25); when Plaintiff arrived, John Clark drove the crane to the CSX property (67:10-17)

- Went to a fenced in yard (CSX property), where about ten trailers were lined up with the parts for the 600 crane (68:22-25, 69:1-5)

- He went to the area where they were assembling the 600 crane, which was in a different area (71:11-17)

- He went to get the trailer with the winch on it, which was the Syracuse lowboy (83:7-11)

- The Syracuse lowboy trailer had two by twelve boards, the trailer portion that has the boards is about 24 to 26 feet (84:11-23)

- The winch was located in the middle, back of the trailer (89:17-22)

- It was between 2:00 p.m. and 2:15 p.m. when he started moving the trailer, and takes it to a spot where the winch can be unloaded (101:12-20)

- A piece of rope (tagline) was tied to the piece being picked up so it could be controlled (106:11-14); the rope used was about 30 feet (110:1-2)

6

- Bill Mersmann was in the small crane, which was to pick up the winch off of the lowboy trailer (108:9-14)

- He grabbed the rope before the winch started to go up; he was standing almost in the middle to the left side (110:12-18)

- The safest place to be when holding the rope was standing on the trailer as opposed to the ground (111:13-15)

- The boom would have to go up about three feet before it could clear the rear of the trailer (115:1-4)

- All of Clark Rigging employees knew what his role was in terms of the tagline, has been done many times before (116:15-25)

- As the winch starts to move, he is walking with it, giving the tag line some slack (116:15-21)

- Height from the deck of the trailer to the ground is about a foot to foot and a half (118:19-24)

- He was not looking at the deck while he was walking, because even though there's an opening in the trailer for the chain well, he would have been off of the trailer before he reached the chain well opening; there have never been missing planks on the trailer before (118:4-14)

- As he was walking with the winch, he took three to five steps and then stepped right into the hole, hitting his right knee (118:17-19)

- He was wearing steel toe work boots at the time of the accident, size 10 or 10 and a half (118:25, 119:1-7)

- He was walking forward when he stepped in the hole, walking about three to four feet (three to five steps) (120:15-20)

- When he was walking he was looking up at the load and at the other Clark Rigging employees (120:21-23)

- The winch was about chest-level when he stepped into the hole, and was not above his head (121:12-19; 121:25, 122:1)

- He did not see the opening before he stepped in it (123:16-18)

- He did not trip or slip, he stepped and fell into the hole (126:18-22)

- Rotten wood usually causes planks to come off, putting something heavy on the planks could break it or break the bolts (130:16-20)

A complete copy of the transcript of Alan Walter is annexed to Defendant's Motion for Summary Judgment as **Exhibit F**.

15. At an examination before trial conducted on February 10, 2021, David Pirro, a representative of Defendant CSX Transportation, Inc., testified as follows:

- Worked for CSX since September 2008 (6:14), original position was "assistant signal maintainer" (7:22-23)

- Duties may include doing Federal Railroad Administration ("FRA") testing on a section of railroad track; fixes troubles; also a signal construction side – builds new signals (e.g., colored lights) and cabling; signal craft is a way to control trains on the track; switch trains (8:15-25; 9:1-14)

- Maintenance side: have a section of track you're responsible for doing all the testing for, answering trouble calls (10:20-21); construction side, building new locations, new crossings, working on five man teams (foreman and four maintainers) (10:22-25)

- Became full signal maintainer two weeks after starting in 2008 (11:6)

- Became "engineer of signal construction" 2012 (11:11); overseeing various teams at construction locations, safety audits (11:16-20)

- He is personally based in Syracuse (12:6)

- Became general engineer of signal construction (manager, then became general manager) (12:20-23)

- Currently director of signal construction (13:3-4); director of east regional signal construction (13:9-10); oversees everything that is signal construction (13:22-23)

- Incident was part of the Positive Train Control (PTC) initiative (15:8-9)

- Decision was made to "greenfield" everything –put in new [signal] houses, new cable, new signals – because of the age of everything (16:3-9)

- Job involving the bridge connected to this accident, project was called Buffalo Terminal, phase three (16:24)

- Phase three involved removal and replacement of new bridges (18:8-11)

- Current bridges were 50-60 years old, all steel and rusted – needed to be replaced (18:15-20)

- Bridge involved in the work was control point ("CP") 436 (18:24-25; 19:1)

- Went out with a representative from Clark Rigging to look at the location and determine the type of equipment that would be needed in order to execute the contract between CSX Transportation, Inc. and Niagara Erecting, Inc. (20:23-25; 23:13-15) about 3-5 months prior to July 21, 2017 (21:7-12); showed him the location and where the bridge needed to be put and where he could safely set up his crane (22:1-6)

- The new bridge has to be up and ready to go before they can take the old bridge down (25:11-14)

- Clark Rigging was involved in putting the mast up of the bridge over the tracks with the crane (25:16-20)

- On Saturday, July 22, 2017, the plan was for Clark Rigging to raise the mast (horizontal part of the bridge) to be installed (26:17-23); installation/mounting of the piece was to be done by Clark Rigging (27:1-3); Sunday, July 23, 2017, Clark would remove the old signal bridge (27:4-7)

- Approved and had notice that Clark would be at an open lot (staging area), which included Clark's assembly of the crane (28:6-17)

- Believes the open area where Clark was assembling the crane was owned by CSX (28:18-21)

- Was at the location on July 21, 2017, checking on progress, etc. (29:11-18)

- Assembling the crane about 50-100 feet from the track (33:3-5); CSX gets involved when they are about 7 feet from the track (32:13-17)

- His first knowledge about the accident was about a year to year and a half after (42:24-25)

- CSX signal construction had a safety representative (50:1)

- If a CSX person says a contractor or general contractor is doing something that was not considered to be safe, the CSX person would point it out and ask them to change it (51:14-18)

- Contract covers both removal of the old structure and the lifting and installation of the horizontal piece for the new structure (58:16-20)

A complete copy of the transcript of David Pirro is annexed to Defendant's Motion for Summary Judgment as **Exhibit G**. Another representative of CSX Transportation, Inc., David Meyme, was present during Mr. Pirro's examination before trial.

16. The Defendant has clearly failed to show that there is no genuine issue of material fact that [1] no risk existed which Labor Law § 240(1) was designed to protect, and [2] that the alleged Industrial Code section does not support the Labor Law § 241(6) claim, as is further set forth in the accompanying Memorandum of Law.

WHEREFORE, your affiant respectfully requests this Court enter an Order as follows:

1. Denying Defendant's Motion for Summary Judgment; and
2. For such other and further relief as this Court may deem just and proper.

Affirmed this 12th day of October, 2021.

/s/BOYD L. EARL, ESQ.
BOYD L. EARL, ESQ.