# EXHIBIT 4
## (PART II)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALAN WALTER

               Plaintiff,              **AFFIDAVIT**

   -vs-

                              Docket No.: 1:19-cv-01583-WMS-JJM

CSX TRANSPORTATION, INC.

               Defendant.

STATE OF NEW YORK    )
COUNTY OF ERIE        )

      ALAN WALTER, being duly sworn, does depose and state:

     1.      I am the Plaintiff in the above-captioned action, which involves an accident which occurred on July 21, 2017 while working for Clark Rigging in connection with a project contracted with CSX Transportation, Inc. regarding the demolition of a railroad bridge, and the erection of a new one at that location.

     2.      During the course of unloading a winch to construct the 600 ton crane to be used for the demolition, I fell through a hole in the trailer which was located under the winch before it was lifted.

     3.      As a result of the fall, I sustained serious injuries requiring surgical intervention.

     4.      Annexed hereto as Exhibit A are photographs depicting the entrance to the property where the accident occurred.  The photographs accurately depict that location and signs that are posted on the property.

     5.      Annexed hereto as Exhibit B is a map depicting the area where the work was being performed.

6.      On Exhibit B, I have placed an "X", alongside my initials, which shows the area where the trailer was parked at the time of my accident, and where the accident itself took place.

7.      It is my understanding that the parcel, which had been selected by the CSX Project Manager for the crane setup to be done, was owned by CSX Transportation, Inc. at the time my accident occurred.

WHEREFORE, deponent respectfully requests this Court enter an Order as follows:

1.  Granting summary judgment on the issue of liability against the Defendant, CSX Transportation, Inc.; and

2.  For such other and further relief as this Court may deem just and proper.

DATED:        September 9, 2021

_Alan Walter_
ALAN WALTER

Sworn to before me this
9 day of September, 2021

Notary Public

Kalissa S. ~~Schelble~~ Rondinelli
Notary Public, State of New York
Registration No. 01SC6255021
Qualified in Erie County
Commission Expires January 30, 2024

# EXHIBIT A





# EXHIBIT B



# Erie County On-Line Mapping Application

**Legend**

Parcels

**Streets and Highways**
- Interstate
- Primary State Road
- Secondary State Road
- County Road
- Local Road

1 : 4,514

ERIE COUNTY
DEPARTMENT OF ENVIRONMENT & PLANNING
OFFICE OF GIS

This map is a user generated static output from an Internet mapping site and is for reference only. Data layers that appear on this map may or may not be accurate, current, or otherwise reliable.

0    0.07    0.1 Miles

WGS_1984_Web_Mercator_Auxiliary_Sphere
THIS MAP IS NOT TO BE USED FOR NAVIGATION

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALAN WALTER

*Plaintiff,*

–vs–

CSX TRANSPORTATION, INC.

*Defendant.*

Docket No.: 1:19-cv-01583-WMS-JJM

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT

Boyd L. Earl, Esq.
LOTEMPIO P.C. LAW GROUP
*Attorneys for Plaintiff*
181 Franklin Street
Buffalo, New York 14202
Phone: (716) 855-3761
Email: boydearl@gmail.com

DATED:      Buffalo, New York
                September 14, 2021

# TABLE OF CONTENTS

**Page**

Table of Contents ........................................................................................... i

Table of Authorities ....................................................................................... ii

Preliminary Statement .................................................................................... 1

Statement of Facts .......................................................................................... 1

Summary of Argument .................................................................................... 2

Argument ........................................................................................................ 3

      I:      Summary Judgment Under New York Labor Law § 240(1) is Warranted ... 3

          A.  Defendant, CSX, was the contractor and owner of the property where
              Plaintiff was injured while engaging in construction activity .................... 5

          B.  Plaintiff was working on an "elevated work site"
              under Labor Law § 240(1) ....................................................................... 7

          C.  Plaintiff was engaging in the erection of a structure under
              Labor Law § 240(1) at the time of the incident ..................................... 8

          D.  Defendant violated the provisions in Labor Law § 240(1) ..................... 10

          E.  The missing plank on the flatbed was the proximate cause
              of Plaintiff's injury .............................................................................. 11

      II.     Plaintiff's Accident and Injuries were the Kind Intended to
             be Covered by New York Labor Law § 241(6) ..................................... 11

          A.  Plaintiff was employed to complete his job duties on a construction
              site and was injured while on the construction site owned
              by the Defendant, CSX ........................................................................ 13

          B.  The size of the opening because of the missing plank,
              in conjunction with the distance from the ground to the
              deck of the lowboy trailer created a falling hazard ............................... 14

          C.  Defendant violated 12 NYCRR § 23-1.7(b) (Industrial Code) when it
              did not provide adequate protection for falling hazards ........................ 15

D.  The opening in the deck of the lowboy trailer was not an integral part of the ongoing work being performed by the Plaintiff .................................16

E.  Defendant's violation was the proximate cause of Plaintiff's accident and subsequent injuries ........................................................17

Conclusion .........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Statutes:**                                                                                    **Page(s)**

FRCP 56 ...............................................................................................................3

N.Y. Labor Law § 240 ...............................................................................2-9, 11

N.Y. Labor Law § 241 ......................................................................2, 11-14, 16-17

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................3

*Aversano v. JWH Constr., LLC*,
831 N.Y.S.2d 222, 223 (2d Dep't 2007) ............................................................5

*Biondo v. Kaleida Health*,
935 F.3d 68 (2d Cir. 2019) ................................................................................3

*Blair v. Cristani*,
745 N.Y.S.2d 468 (2d Dep't 2002) ...................................................................12

*Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.*,
803 N.E.2d 757 (N.Y. 2003) ..............................................................................4

*Brown v. 44TH St. Dev., LLC*,
137 A.D.3d 703 (N.Y. App. Div. 1st Dep't 2016) ............................................4

*Brown v. 44TH St. Dev., LLC*,
5 N.Y.S.3d 692 (Sup. Ct., N.Y. Cty. Mar. 19, 2015) ..........................4, 7, 10, 16

*Caddy v. Interborough Rapid Transit Co.*,
88 N.E. 747, 749 (N.Y. 1909) ............................................................................8

*Caprio v. Tishman Constr. Corp.*,
658 N.Y.S.2d 919, 921 (1st Dep't 1997) .................................................. 7

*Coleman v. Crumb Rubber Mfrs.*,
940 N.Y.S.2d 170, 172 (3d Dep't 2012) ............................................. 7, 14

*Copertino v. Ward*,
473 N.Y.S.2d 494 (2d Dep't 1984) ......................................................... 5

*Corning v. Elms Realty Corp.*,
2019 N.Y. Misc. LEXIS 6574 (Sup. Ct., Kings Cty. Dec. 2, 2019) ............. 8

*Cun-En Lin v. Holy Family Monuments*,
796 N.Y.S.2d 684, 686 (2d Dep't 2005) .................................................. 9

*D'Egidio v. Frontier Ins. Co.*,
704 N.Y.S.2d 750, 753 (3d Dep't 2000) ................................................ 14

*Feltt v. Owens*,
668 N.Y.S.2d 757, 758-59 (3d Dep't 1998) ............................................. 5

*Giarla v. Coca-Cola Co.*,
2021 U.S. Dist. LEXIS 54945 (W.D.N.Y. 2021) ..................................... 3

*Gonnert v. Victor at W. 53, LLC*,
11 Misc 3d 1059(A), *5 (Sup. Ct., Kings Cty. Mar. 3, 2006) ................... 5

*Joblon v. Solow*,
695 N.E.2d 237, 242 (N.Y. 1998) .......................................................... 9

*Lawler v. Globalfoundries U.S., Inc.*,
2014 U.S. Dist. LEXIS 138030 (N.D.N.Y. 2014) ............................ 4, 7, 14

*Leshaj v Long Lake Assoc.*,
805 N.Y.S.2d 692 (3d Dep't 2005) ......................................................... 7

*Lewis-Moors v. Contel of New York*,
578 N.E.2d 434, 434 (N.Y. 1991) .......................................................... 8

*McCoy v. 43-25 Hunter, LLC*,
2020 N.Y. Misc. LEXIS 3904 (Sup. Ct., N.Y. Cty. July 28, 2020) .......... 10

*McCoy v Kirsch*,
951 N.Y.S.2d 32, 35 (2d Dep't 2012) ...................................................... 8

*Nigel Issac v.  Atlantic Yards B2 Owner, LLC and Turner Construction Co.*
2019 N.Y. Misc. LEXIS 6293 *20 (Sup. Ct., Kings Cty. Dec. 2, 2019) .................................5

*Pawlicki v. 200 Park, L.P.*,
2020 WL 4287416 (Sup. Ct, N.Y. Cty. July 27, 2020) ...........................................................7

*Piccuillo v. Bank of N.Y. Co.*,
716 N.Y.S.2d 20 (1st Dep't 2000) ..........................................................................................14

*Pilkington v. Tutor Perini Bldg. Corp.*,
2020 U.S. Dist. LEXIS 47357 (S.D.N.Y. 2020) .................................................................3, 12

*Rice v. Bd. of Educ.*,
755 N.Y.S.2d 419,421 (2d Dep't 2003) ..................................................................................14

*Rocovich v. Consolidated Edison Co.*,
78 N.Y.2d 509 (N.Y. 1991) .......................................................................................................4

*Rossi v. 140 W. JV Manager LLC*,
99 N.Y.S.3d 38 (1st Dep't 2019) .............................................................................................12

*Runner v. New York Stock Exch., Inc.*,
922 N.E.2d 865 (N.Y. 2009) ......................................................................................................4

*Scott v. Harris*,
550 U.S. 372 (2007) ....................................................................................................................3

*Villalba v. Robo-Breaking, Co.*,
2014 U.S. Dist. LEXIS 137891 (E.D.N.Y. 2014) ...................................................................15

*Zimmer v. Chemung County Performing Arts, Inc.*,
482 N.E.2d 898 (N.Y. 1985) ...............................................................................................5, 10

## Codes and Regulations:

12 NYCRR § 23-1.4 .................................................................................................................13

12 NYCRR § 23-1.7 .................................................................................................................15

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Plaintiff's Motion for Summary Judgment on the issue of liability against Defendant, CSX Transportation, Inc., together with such other and further relief as this Court may deem just and proper.

## STATEMENT OF FACTS

CSX Transportation, Inc. and Niagara Erecting, Inc. (affiliated with Clark Rigging) entered into a construction contract on March 7, 2013 for the purpose of removing bridge structures from CSX right of way.  Exhibit M. Clark Rigging and Rental Corporation ("Clark Rigging") was involved in the construction project with CSX Transportation, Inc. ("CSX" or "Defendant") to assist in the demolition and erection of bridge structures.  Exhibit H, 18:8–11.  Plaintiff, Alan Walter ("Plaintiff") was employed by Clark Rigging as a truck driver and was involved in portions of the project.  Exhibit G, 35:12–16, 51:3–10.

On July 21, 2017, a 600-ton crane ("600-crane") was being assembled by Clark Rigging employees so that it could be used the following day to begin construction on the railroad bridge. Exhibit D, 6:2–10; Exhibit G, 57:16–18; Exhibit H, 26:17–23, 28:6–17, 28:18–21.  Individual pieces of the 600-crane were brought to an open green-space near the railroad bridges, property that was owned by CSX.  Exhibit E, 26:17–21; Exhibit G, 68:22–25, 69:1–5; Exhibit I; Exhibit J. A piece of equipment ("a winch") that was transported from Syracuse, New York, was placed on a lowboy trailer in such a manner that it covered the portion of the deck that was missing a plank of wood. Exhibit D, 19:17–23, 20:1; Exhibit E, 14:3–9; Exhibit G, 123:20–22; Exhibit F, 15:3–11, 18:12–15.  The missing plank—which measured about one foot by three to four feet long—created an opening on the deck of the trailer, but it was not visible because of the winch on the trailer bed. Exhibit D, 19:17–23, 20:1; Exhibit E, 14:3–9; Exhibit G, 97:2– 9, 123:20–22.  None

of the Clark Rigging employees indicated they were aware of the missing plank.  Exhibit E, 68:4–8; Exhibit G, 123:16–19.

Plaintiff was controlling the winch with a rope/tagline ("tagline") as it was being hoisted in the air and moved toward the 600-crane.  Exhibit D, 24:13–19; Exhibit E, 14:14–23; Exhibit G, 118:17–19.  As he was watching and guiding the equipment, he walked forward about three to five feet and fell through the opening, a distance of approximately one and a half feet to the ground, striking his right knee as he fell.  Exhibit D, 24:13–19; Exhibit E, 17:7–9; Exhibit G, 118:17–19. Pain shot up his right leg and into his spine and neck. Exhibit G, 132:17–18.

No equipment or safety devices were provided by CSX to Clark Rigging employees, nor did CSX conduct any safety inspection of Clark Rigging equipment.  Exhibit H, 42:6–9.  However, pursuant to the contract issued by CSX, CSX retained the authority to (1) select the premises upon which Clark Rigging employee were to assemble the 600-crane; (2) handle disputes through the Railroad Chief; (3) terminate the contract; and (4) set safety standards.  *See* Exhibit M, ¶¶ 9, 15, 18, 19.

## SUMMARY OF ARGUMENT

Plaintiff maintains that there are no genuine material issues of fact relative to the above-captioned action.  As such, Plaintiff argues that summary judgment should be granted on liability pursuant to Defendant's violations of New York Labor Law § 240(1), or in the alternative, New York Labor Law § 241(6).

A contractor and owner of property upon which construction work is being performed has a non-delegable duty to ensure that the workers are protected from hazardous conditions.  The missing plank in the lowboy trailer constitutes a hazardous condition, and Defendant's failure to provide the Clark Rigging employees with any devices to prevent them from falling is a direct

violation of Labor Law §§ 240(1) and 241(6), and 12 NYCRR § 23-1.7(b) (Industrial Code). Therefore, the Court should grant Plaintiff's Motion for Summary Judgment.

## ARGUMENT

Rule 56 of the Federal Rules of Civil Procedure authorizes this Court to grant judgment as a matter of law where there is no genuine issue as to any material fact.  An issue is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Biondo v. Kaleida Health*, 935 F.3d 68, 73 (2d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The party opposing the motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation" to create an issue of material fact. *See Pilkington v. Tutor Perini Bldg. Corp.*, 2020 U.S. Dist. LEXIS 47357 *24 (S.D.N.Y. 2020). Accordingly, the moving party must establish that no such issue remains for trial, even if the evidence is viewed in the light most favorable to the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### I.   SUMMARY JUDGMENT UNDER NEW YORK LABOR LAW § 240(1) IS WARRANTED.

In this diversity action, the substantive law of the State of New York applies.  *See Giarla v. Coca-Cola Co.*, 2021 U.S. Dist. LEXIS 54945 *9–10 (W.D.N.Y. 2021).  The injuries sustained by Plaintiff in this action are regulated by New York Labor Law § 240(1), which states:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

To succeed on a claim under Labor Law § 240(1), the Plaintiff "must show that (1) the statute was violated and (2) the violation was the proximate cause of his injury." *Lawler v. Globalfoundries U.S., Inc.*, 2014 U.S. Dist. LEXIS 138030 *10 (N.D.N.Y. 2014) (citing *Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.*, 803 N.E.2d 757, 761 (N.Y. 2003)). Once these two elements are fulfilled, the Defendant cannot raise the defense of contributory negligence of Plaintiff, and the Defendant will be held strictly liable. *See Blake*, 803 N.E.2d at 762–63.

The legislative intent surrounding the purpose and scope of Labor Law § 240(1) is to protect against the hazards that differences in elevation pose. *See Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 514 (N.Y. 1991). The New York Court of Appeals has held that:

> The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured.

*Id.* More recently, the Court of Appeals has held that "the single decisive question is whether the plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." *Runner v. New York Stock Exch., Inc.*, 922 N.E.2d 865, 866–67 (N.Y. 2009). Further, the New York State Appellate Division of the First Department affirmed unanimously the Supreme Court's Opinion on appeal that "the statute is to be construed as liberally as may be for the accomplishment of the purpose of protecting who are exposed to gravity related risks." *Brown v. 44TH St. Dev., LLC*, 137 A.D.3d 703, 703 (App. Div. 1st Dep't 2016) (affirming *Brown v. 44TH St. Dev., LLC*, 5 N.Y.S.3d 692, 696 (Sup. Ct., N.Y. Cty. Mar. 19, 2015).

### A. **Defendant, CSX, qualifies as the General Contractor for this project and owner of the property where Plaintiff was injured while engaging in construction activity.**

Under Labor Law § 240(1), an owner and contractors' duty to provide the required protection against elevation-related risks in nondelegable. *Nigel Issac v. Atlantic Yards B2 Owner, LLC and Turner Construction Co.*, 2019 N.Y. Misc. LEXIS 6293 *20 (Sup. Ct., Kings Cty. Dec. 2, 2019). Owners and contractors are not required to have exercised supervision or control over the subject work or the injured worker to be held liable. *Id.* (citing to *Zimmer v. Chemung County Performing Arts, Inc.*, 482 N.E.2d 898 (N.Y. 1985)). In *Copertino v. Ward*, "the Court held that an "owner" under the Labor Law has been held to encompass a person who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his benefit." *See Gonnert v. Victor at W. 53, LLC*, 11 Misc 3d 1059(A), *5 (Sup. Ct., Kings Cty. Mar. 3, 2006) (citing *Copertino v. Ward*, 473 N.Y.S.2d 494 (2d Dep't 1984)). Further, in *Feltt v. Owens*, the court stated that while Labor Law §§ 240 and 241, do not define a "general contractor", it is "generally responsible for the coordination and execution of all the work at the worksite." *Feltt v. Owens*, 668 N.Y.S.2d 757, 758-59 (3d Dep't 1998); *see also Aversano v. JWH Constr., LLC*, 831 N.Y.S.2d 222, 223 (2d Dep't 2007) (stating "a general contractor will be held responsible . . . if it was responsible for coordinating and supervising the entire construction project and was invested with a concomitant power to enforce safety standards and to hire responsible contractors")).

The present claim is brought against CSX on the basis that it was the owner of the property upon which construction work was being performed and the general contractor of the project. *See* Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit M. Pursuant to the contract issued by CSX, a CSX representative selected and instructed the Clark Rigging employees where to prepare and assemble the 600-crane, the area where the accident ultimately occurred. *See* Exhibit H, 27:8-16,

5

28:6-21.  The Clark Rigging employees were required to erect the 600-crane to demolish the old railroad bridge and erect a new railroad bridge in accordance with the contract issued by CSX.  *See* Exhibit H, 20:18-25, 21:1, 23:13-15. The erection of the 600-crane and the demolition and erection of the railroad bridge occurred on the property owned by CSX, in the area specifically designated by CSX, and was for the benefit of CSX.  Also, the Plaintiff's accident occurred on the property owned by CSX while performing his duties under the contract between CSX and Niagara Erecting, Inc. (affiliated with Clark Rigging), for the benefit of CSX.  As owner of the property wherein the accident occurred and as the beneficiary of the work being performed by Plaintiff, CSX is an "owner" under Labor Law § 240(1); thus, shall be held liable for any injury occasioned by a violation of Labor Law § 240(1).

In addition, CSX qualifies as the General Contractor under the Labor Law.  CSX agreed to enter into a contract with Niagara Erecting, Inc. a company affiliated with Clark Rigging, on March 7, 2013 for the purpose of removing bridge structures from CSX right of way.  *See* Exhibit M. CSX retained authority within the contract to: (1) select the premise upon where the work was to be executed; (2) resolve disputes via the Chief of Railroad; (3) terminate the contract; and (4) set safety standards which the Niagara Erecting, Inc. was to follow.  *See* Exhibit M, ¶¶ 9, 15, 18, 19. CSX had an employee on site to direct and/or approve where Clark Rigging employees were to assemble the 600-crane on the day of Plaintiff's accident. *See* Exhibit H, 28:13-17.  Pursuant to the contract, specific safety measures set out by CSX required that Clark Rigging become familiar with CSX's safety booklet entitled "THE CSX SAFE WAY" and reserved the right to suspend the work being performed if Clark Rigging failed to "remain in the boundaries specified by the [railroad's] flagman." *See* Exhibit M, ¶ 19. Also, a CSX representative testified that even though they were not required to supervise the Clark Rigging employees in the assembly of the 600-crane

specifically, they would still advise Clark Rigging employees if they were conducting work in an unsafe manner. *See* Exhibit H, 51:14-18. Although CSX forgave the control of several aspects of the project within the contract, CSX was responsible for the general coordination and execution of the entire demolition and erection of the railroad bridges and in addition held the concomitant power to enforce safety standards and to hire responsible contractors. Thus, CSX is a "general contractor" under Labor Law § 240(1) and shall be held liable for any injury occasioned by a violation of Labor Law § 240(1).

**B.   Plaintiff was working on an "elevated work site" under Labor Law § 240(1).**

To successfully allege a claim under Labor Law § 240(1), the plaintiff must show that the work they performed was at an elevation. In *Leshaj* the court stated, "a work site is elevated within the meaning of the statute where the required work itself must be performed at an elevation . . . such that one of the devices enumerated in the statute will safely allow the worker to perform the task." *Coleman v. Crumb Rubber Mfrs.*, 940 N.Y.S.2d 170, 172 (3d Dep't 2012) (citing *Leshaj v. Long Lake Assoc.*, 805 N.Y.S.2d 692 (3d Dep't 2005)). Further in *Brown*, the court held that 12 to 18 inches off the ground was considered an elevated work site wherein the plaintiff fell through an opening in a latticework rebar deck to a plywood form. *Brown*, 27 N.Y.S.3d at 380; *see also*, *Lawler*, 2014 U.S. Dist. LEXIS 138030, at *11–12 (applying where a plaintiff fell through an open manhole), *Caprio v. Tishman Constr. Corp.*, 658 N.Y.S.2d 919, 921 (1st Dep't 1997) (applying where a plaintiff was focusing overhead while painting a ceiling when he stepped into an uncovered hole and fell three feet); *see generally*, *Pawlicki v. 200 Park, L.P.*, No. 155864/2016, 2020 WL 4287416, at *6 (Sup. Ct., N.Y. Cty. July 27, 2020).

At the time of the accident, the Plaintiff was helping move a winch off a lowboy trailer to assemble the 600-crane. The winch on the trailer was lifted by a smaller crane (an assist crane)

and was guided by the Plaintiff by means of a tagline. The Plaintiff was holding the tagline and focusing on the winch as he was helping direct the winch, when he stepped through an opening in the floor of the lowboy trailer. *See* Exhibit F, 29:5-6; Exhibit G, 118:17-18.

Similar to *Brown*, the distance from the ground to the deck of the lowboy trailer was about one foot and a half. Similar to *Caprio*, the Plaintiff needed to watch the winch to make sure it did not swing out of place as the large winch was being hoisted into the air. It was standard procedure that one would help assist the maneuvering of the hoisted equipment via taglines while on the deck of the lowboy trailer. *See* Exhibit E, 66:11-18. Thus, the coupling of the Plaintiff focusing on the winch being hoisted into the air in order to direct the equipment with the tagline, as a requirement set forth by his job, plus standing on the lowboy trailer that is 18 inches above ground level, the Plaintiff was engaging in a task that created an "elevation-related risk," wherein Labor Law § 240(1) should apply.

**C.** **Plaintiff was engaging in the erection of a structure under Labor Law § 240(1) at the time of the incident.**

For over a hundred years, the New York Court of Appeals has defined a "structure" within the Labor Law § 240(1) as "any production or piece of work artificially built up or composed of parts joined together in some definite manner." *Lewis-Moors v. Contel of New York*, 578 N.E.2d 434, 434 (N.Y. 1991) (citing to *Caddy v. Interborough Rapid Transit Co.*, 88 N.E. 747, 749 (N.Y. 1909)). When deciding as to whether the item is a structure, the Court of Appeals has considered the "item's size, purpose, design, composition, and degree of complexity; the ease or difficulty of its assembly and disassembly; the tools required to create it and dismantle it; the manner and degree of its interconnecting parts; and the amount of time the item is to exist." *Corning v. Elms Realty Corp.*, 2019 N.Y. Misc. LEXIS 6574, *6-7 (Sup. Ct., Kings Cty. Dec. 2, 2019)(citing *McCoy v. Kirsch*, 951 N.Y.S.2d 32, 35 (2d Dep't 2012). Further, the Court of Appeals has refrained from

specifically limiting recovery from an injury that occurred from work performed on structures at constructions sites to avoid owners and contractors from instructing work to be completed off site to avoid liability. *Joblon v. Solow*, 695 N.E.2d 237, 242 (N.Y. 1998). It is respectfully submitted that the facts of this case, and the contract to replace the CSX bridge above the railway results in CSX being deemed the owner for the purposes of the Labor Law, regardless of where the accident occurred. While it appears clear that CSX owned the property where the accident occurred, even if they had not, they would still be deemed the owner for the purposes of the Labor Law claims herein.

Here, the Clark Rigging employees were hired by CSX for the demolition and erection of a specific railroad bridge. In order to execute the contract with CSX, Clark Rigging employees had to use a 600-crane to lift the materials needed to demolish and erect the bridge. However, due to the size of the 600-crane, the crane had to be assembled by experienced workers in a separate location which was selected by CSX and within fifty to one hundred feet from the railroad bridge. *See* Exhibit H, 33:1-6. In addition, the parts to the 600-crane had to be brought to the construction site on at least nine separate trailers. The testimony is undisputed that to assemble the 600-crane there are several parts joined together by experienced workers using several tools, including an assist crane and taglines. The combination of the 600-crane's enormous size, level of difficulty to assemble, the time required to assemble, and the number of trailers, tools and employees required to erect the crane; the 600-crane is well within the definition of a structure under Labor Law § 240(1). *See, e.g., Cun-En Lin v. Holy Family Monuments*, 796 N.Y.S.2d 684, 686 (2d Dep't 2005) (holding that a crane is a structure under Labor Law § 240(1)). At the time of the incident, the Plaintiff was directly operating a tagline to maneuver the winch which was a part necessary to construct the 600-crane. Thus, the Plaintiff was actively engaged in the erection of a structure –

600-crane – at the time of his accident, and furthermore, the work was required as part of the overall project of demolishing and re-erecting a new railway bridge in the area.

### D. **Defendant violated the provisions in Labor Law § 240(1).**

Under the statute, Defendant was required to provide safety devices to the workers, and failure to do so is a violation of the statute and compels summary judgment. *See Zimmer*, 482 N.E.2d at 901. To determine if the proposed safety device is required, the Court has taken into consideration the practicability of the safety device. *See McCoy v. 43-25 Hunter, LLC*, 2020 N.Y. Misc. LEXIS 3904 *12 (Sup. Ct, N.Y. Cty. July 28, 2020) (citing *Brown v. 44TH St. Dev., LLC*, 5 N.Y.S.3d 692, 696 (Sup. Ct., N.Y. Cty. Mar. 19, 2015). In *Brown*, an expert witness testified that it would have been practical for defendants to provide planks of plywood on the rebar for the plaintiff to safely ingress and egress, to which the court agreed. *Brown*, 5 N.Y.S.3d at 701. Whereas, in *McCoy* the defendants raised a triable issue of fact as to whether laying down planks of plywood over the rebar would have impeded the plaintiff's work, which included pouring concrete into the rebar lattice, to which the court also agreed. *McCoy*, 2020 N.Y. Misc. LEXIS 3904, at *12.

In order to accomplish the project for which they were hired, the Clark Rigging workers were required to assemble the 600-crane, which encompassed piecing together heavy parts brought in on several trailer beds. The hoisting of these heavy parts, in conjunction with the need for the Clark Rigging employees to stand and walk on the trailer beds while this equipment is being moved overhead, creates an elevational risk. There is no testimony or evidence in this case that shows CSX provided Clark Rigging employees with any safety devices. There is no testimony to contradict the fact that Plaintiff did not have any sort of safety device while he was helping in the assembly of the 600-crane—which is considered a dangerous task. Also, there is testimony that

the missing plank in the deck of the lowboy trailer is not common practice as the deck is a working surface and cannot have any openings. *See* Exhibit F, 13:11-17, 25:4-17. Thus, placing a plank over the hole where the Plaintiff fell would not be an impractical safety device for the purposes of Labor Law § 240(1), nor would the plank impede on the Plaintiff's ability to guide the winch hoisted in the air via a tagline while standing and walking on the deck of the lowboy trailer. Therefore, the Defendant failed to provide a practical and necessary safety device to prevent the Plaintiff from falling through the floor of the lowboy trailer as he guided the winch overhead using a tagline – irrespective of whether the accident occurred on a construction site or not.

### E. <u>The missing plank on the flatbed was the proximate cause of Plaintiff's injury.</u>

All testimony provided by the witnesses to the accident confirm the fact that the Plaintiff stepped into the opening created by a missing plank—he did not otherwise slip, trip or fall. It is evident that Plaintiff's injuries to his knee, back and spine were a direct result from his fall. Also, it is undisputed that the deck of the lowboy trailer is above ground level, specifically about one foot and a half. Therefore, the Plaintiff's injuries were the direct consequence of the Defendant's failure to provide an adequate protection against a risk arising from a physically significant elevation differential. Had the missing plank been replaced, the Plaintiff could not have fallen through the hole. Thus, there is no genuine issue of fact that the missing plank in the deck of the lowboy trailer was the proximate cause of Plaintiff's injuries.

## II. **PLAINTIFF'S ACCIDENT AND INJURIES WERE THE KIND INTENDED TO BE COVERED BY NEW YORK LABOR LAW § 241(6).**

The injury sustained by Plaintiff in this action is also regulated by New York Labor Law § 241(6), which provides:

> All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and

11

adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

Similar to Labor Law § 240(1), Labor Law § 241(6) imposes a non-delegable duty on the owners and general contractors to provide this adequate protection and safety to workers on-site. *See Pilkington*, 2020 U.S. Dist. LEXIS 47357 *26–27; *see also Nigel*, 2019 N.Y. Misc. LEXIS at *17 (stating liability applies to owners and contractors irrespective of fault or negligence if Labor Law § 241(6) violation is established)).

To succeed on summary judgment under Labor Law § 241(6), the plaintiff "must establish no genuine dispute of fact that (1) the defendant was an owner, contractor, or agent of an owner or contractor; (2) 'that the defendant violated a specific, "concrete" implementing regulation of the Industrial Code'; and (3) that the violation was the 'proximate cause' of the plaintiff's injury." *Pilkington*, 2020 U.S. Dist. LEXIS 47357 *27 (citing *Rossi v. 140 W. JV Manager LLC*, 99 N.Y.S.3d 38 (1st Dep't 2019)); *see also Blair v. Cristani*, 745 N.Y.S.2d 468, 469 (2d Dep't 2002).

Here, CSX is a contractor and owner under Labor Law §241(6). First, there is no dispute in testimony that Defendant, CSX, is the owner of the property where the accident occurred. Second, there is no dispute that CSX was the beneficiary of the contract between Defendant and Niagara Erecting, Inc. (affiliated with Clark Rigging). Third, there is no dispute in testimony that the Defendant never provided the Plaintiff with any safety devices to prevent him from falling through the deck of the lowboy trailer. Further, pursuant to the contract between CSX and Niagara Erecting, Inc. (affiliated with Clark Rigging), CSX specifically retained the authority to general coordination and execution of the entire demolition and erection of the railroad bridges, in addition

retained concomitant power to enforce safety standards and to hire responsible contractors. Thus, CSX is the General Contractor as well as owner under the Labor Law § 241(6).

    **A.  <u>Plaintiff was employed to complete his job duties on a construction site and was injured while on the construction site owned by the Defendant, CSX.</u>**

New York Labor Law § 241(6) applies wherein construction, excavation or demolition is performed on the property. The Court has consistently held that the definition of "construction work" under Labor Law § 241(6) is defined by 12 NYCRR 23-1.4(b)(13) which states,

> All work of the types performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures, whether or not such work is performed in proximate relation to a specific building or other structure and includes, by way of illustration but not by way of limitation, the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, cleaning of the exterior surfaces including windows of any building or other structure under construction, equipment installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose.

CSX contracted with Niagara Erecting, Inc. (affiliated with Clark Rigging) to demolish and erect a railroad bridge. Pursuant to CSX's contract with Niagara Erecting, Inc., Clark Rigging employees had to erect a 600-crane on site – which property is owned by CSX. On July 21, 2017, the Clark Rigging employees began assembling the 600-crane. The Plaintiff was an employee of Clark Rigging and assisted in the erection of the 600-crane. The trailers that had the parts of the 600-crane were held at a separate location from where the 600-crane was being assembled due to the size of the crane and the number of parts needed to erect the 600-crane. However, the 600-crane was assembled within proximity of where the railroad bridge was to be demolished and erected. Under 12 NYCRR 23-1.4(b)(13), equipment installation is considered construction. The assembly of the 600-crane was a necessary equipment installation to execute the contract with CSX and is directly connected to the overall project—demolition and erection of the railroad

bridge.  Therefore, the work that the Plaintiff was engaged in at the time of the accident—assembly of the 600-crane—was directly related to the demolition and erection of the bridge.  Thus, Labor Law § 241(6) should apply.

**B.**  **The size of the opening because of the missing plank, in conjunction with the distance from the ground to the deck of the lowboy trailer, created a falling hazard.**

With respect to liability under Labor Law § 241(6) and 12 NYCRR § 23-1.7, New York courts have held that the size of the opening and the distance of the fall are taken into account.  *See Lawler*, 2014 U.S Dist. LEXIS 138030 *23–24.  "[A]n opening must be of significant depth and size to fall within the regulation's [12 NYCRR 23-1.7] protection."  *Coleman v. Crumb Rubber Mfrs.*, 940 N.Y.S.2d 170, 172 (3d Dep't 2012) (quoting *D'Egidio v. Frontier Ins. Co.*, 704 N.Y.S.2d 750, 753 (3d Dep't 2000).

> No specific minimum size has been established, but . . . many cases applying this provision reference a hole 'large enough for a person to fall through to a lower area.'  It is not necessary, however, that an injured worker actually fall all the way through such an opening to sustain a claim premised on this regulation, and an opening 14 to 16 inches wide has been found sufficiently large to support such a claim.

*Id.* (internal citations omitted).  In *Lawler*, plaintiff fell through a hole that was 24 by 24 inches wide and three feet deep, which was considered hazardous.  *See Lawler*, 2014 U.S Dist. LEXIS 138030 *23–24.  Whereas in *Rice*, the plaintiff fell through a hole in the platform of a flatbed truck that was one foot by one foot and the court held that 12 NYCRR § 23-1.7 is "inapplicable where the hole is too small for a worker to fall through."  *Rice v. Bd. of Educ.*, 755 N.Y.S.2d 419, 421 (2d Dep't 2003)(citing *Piccuillo v. Bank of N.Y. Co.,* 716 N.Y.S.2d 20 (1st Dep't 2000); *D'Egidio v. Frontier Ins. Co.,* 704 N.Y.S.2d 750 (3d Dep't 2000).  Thus, where a "hazardous opening" –

14

namely a hole – is big enough for a person to fall through it, 12 NYCRR § 23-1.7 should apply. *Villalba v. Robo-Breaking, Co.*, 2014 U.S. Dist. LEXIS 137891, at \*17 (E.D.N.Y. 2014).

In the immediate case, the Plaintiff fell through an opening that was one foot wide by three to four feet long, and about a foot and a half deep – namely two times longer than the hole in *Lawler* and two to three times longer than the hole in *Rice*.  Even though his right leg was the only body part that went through the opening, as is noted above, the case law has established that a person's entire body does not necessarily have to go through the hole for the code to apply.  The hole need only be large enough for a worker to fall through.  Since, the opening caused by the missing plank was large enough for a person's entire body to fit through, this falling hazard falls within the purview of 12 NYCRR 23-1.7.

**C.  Defendant violated 12 NYCRR § 23-1.7(b) (Industrial Code) when it did not provide adequate protection for falling hazards.**

Plaintiff is alleging a violation of 12 NYCRR § 23-1.7 (Industrial Code), which deals with performing work on a construction site and the danger of falling hazards.  This provision was violated and the Defendant's violation was the proximate cause of the Plaintiff's injuries.  Section 23-1.7(b)(1)(i) provides "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule)."  12 NYCRR § 23-1.7.

Here, there was a hole in the deck of the lowboy trailer which measured approximately one foot by three to four feet.  The Plaintiff was unaware of the hole in the deck of the lowboy trailer.  Also, the individuals at the site of the accident were unaware of the hole in the trailer.  The hole – in result of the missing plank – was concealed by the winch that was placed on the lowboy trailer.  It was only after the piece of equipment was being lifted and concurrent with Plaintiff's fall that the hole was uncovered.

15

Specifically, the Plaintiff was maneuvering taglines to control a large winch hoisted in the air while walking on the deck of the lowboy trailer in accordance with standard procedure. As the Plaintiff walked forward three to five feet, the Plaintiff's right leg suddenly dropped into a hole that was originally concealed by the winch that was on the deck. The hole was the direct result of a missing plank from the deck of the lowboy trailer. There is undisputed testimony that an opening in the deck of the lowboy trailer should only exist in the front and back of the trailer where the chains are to be stored, also known as a chain well. *See* Exhibit G, 96:14-21. However, the hole that Plaintiff fell into was not the rear chain well. *See* Exhibit G, 100:7-11. Thus, the hole was not in accordance with standard safety measures. It is also undisputed that the hole either was or should have been fixed immediately after the Plaintiff's incident as the hole should not have existed at the time of the incident. *See* Exhibit D, 20:16-18; Exhibit E, 17:11-15; Exhibit F, 12:10-22, 13:1-17. Since this hole was the result of a missing plank and could have been prevented with the placement of a new plank; the Defendant violated 12 NYCRR § 23-1.7 by failing to prevent the existence of the hazardous opening.

### D.   **The opening in the deck of the lowboy trailer was not an integral part of the ongoing work being performed by the Plaintiff.**

Liability under Labor Law § 241(6) may be established if the cause of the plaintiff's accident is not an integral part of the ongoing work being performed. *Brown*, 5 N.Y.S.3d at 701(holding that rebar steel laid down to pour concrete floors is an integral part of ongoing work being performed; thus, no liability under Labor Law § 241(6)).

Here, the Plaintiff was maneuvering a tagline in order to direct the winch which was a part of the 600-crane. At this time, the Plaintiff was standing on the deck of the lowboy trailer and walking with the tagline as he guided the winch. The Plaintiff fell through a concealed hole in the deck of the trailer while focusing overhead on the winch being hoisted in the air. Again, it is

undisputed that the lowboy trailer's deck is used as a working surface and should not have had a missing plank on the deck. *See* Exhibit F, 13:11-17, 25:4-17. The hole created by the missing plank was not an integral part of erecting the 600-crane or the Plaintiff's maneuvering of the taglines to guide the winch hoisted in the air, nor an integral part of demolishing or erecting the railroad bridge. Thus, Labor Law § 241(6) should apply.

    E.  **Defendant's violation was the proximate cause of Plaintiff's accident and subsequent injuries.**

Plaintiff was engaged in a hazardous task at the time of the accident. The assembly of the 600-crane included the need to guide the winch as it was being hoisted into the air off the lowboy trailer. Plaintiff was standing on the trailer, for which the difference in elevation of the trailer and the ground created a falling risk. CSX did not provide Plaintiff or any Clark Rigging employee with any equipment to prevent falling created by hazardous conditions. When Plaintiff stepped through the opening, there was nothing that prevented him from falling and hitting his knee. As a result of the fall, Plaintiff sustained injuries to his knee, back, and spine. Had CSX–the contractor and owner of the green-space where the 600-crane was being assembled–provided safety equipment to the Plaintiff, specifically a plank, the Plaintiff would not have fallen into the opening and sustained injuries.

## <u>CONCLUSION</u>

For the foregoing reasons, and based on the authorities hereinabove cited, it is respectfully submitted that the Court should grant Plaintiff's Motion for Summary Judgment, together with such other and further relief that this Court may deem just and proper.

DATED:      Buffalo, New York
                September 14, 2021

                                        Respectfully submitted,

                                        **LOTEMPIO P.C. LAW GROUP**

                                      By: <u>/s/BOYD L. EARL, ESQ.</u>
                                          Boyd L. Earl, Esq.
                                          *Attorneys for Plaintiff*
                                          181 Franklin Street
                                          Buffalo, New York 14202
                                          Phone: (716) 855-3761
                                          Email: boydearl@gmail.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
—————————————————————————

ALAN WALTER

                Plaintiff,

    -vs-

CSX TRANSPORTATION, INC.

                Defendant.

—————————————————————————

**STATEMENT OF
MATERIAL FACTS**

Docket No.: 1:19-cv-01583-WMS-JJM

Plaintiff, Alan Walter, by and through his attorneys LoTempio P.C. Law Group, pursuant to Federal Rules of Civil Procedure § 56(c)(1) hereby provides his Statement of Material Facts in support of his Motion for Summary Judgment on his New York Labor Law §§ 240(1) and 241(6) claims.

## IDENTITY OF PARTIES

1.    Niagara Erecting, Inc., entered into a construction contract with CSX Transportation, Inc. to remove certain bridge structures from the CSX right of way (the "Buffalo Terminal Project").  *See* Exhibit M; Exhibit H, 23:13–15.  Niagara Erecting, Inc. and Clark Rigging are affiliated companies.  *See* Exhibit H, 49:10–14.

2.    Plaintiff Alan Walter ("Plaintiff") was employed by Clark Rigging and Rental Corporation ("Clark Rigging") as a truck driver, and involved in portions of the Buffalo Terminal Project.  *See* Exhibit G, 35:12–16, 51:3–10.

## THE BUFFALO TERMINAL PROJECT

3.    Phase Three of the Buffalo Terminal Project was set to begin on July 23, 2017, which included the removal and replacement of certain CSX railroad bridges.  *See* Exhibit H, 18:8–11.

4.      Pursuant to the contract between CSX Transportation, Inc. and Niagara Erecting, Inc., Clark Rigging was to supply and use certain cranes in connection with Phase Three and the removal and replacement of the bridges, including the 600-crane.  *See* Exhibit H, 20:18-25, 21:1, 23:13-15, 25:16–20, 28:3–5.

5.      Also, pursuant to the contract between CSX Transportation, Inc. and Niagara Erecting, Inc. (affiliated with Clark Rigging), CSX was to "provide the premises upon which the [w]ork" was to be done.  *See* Exhibit M.

6.      Prior to the July 23, 2017 start date, Clark Rigging began assembly of a 600-crane on July 21, 2017, in an open lot owned by CSX.  *See* Exhibit D, 6:2–10; Exhibit G, 57:16–18; Exhibit H, 26:17–23, 28:6–17, 28:18–21.

## ASSEMBLY OF 600-CRANE AND INCIDENT

7.      On the morning of July 21, 2017, Plaintiff picked up a trailer from the Clark Rigging Lockport lot containing a fully assembled small crane, which he brought to the CSX job site.  *See* Exhibit G, 64:16–22; 65:23–25.  The small crane was on the Lockport lowboy trailer.  *See* Exhibit G, 63:10–11.

8.      After Plaintiff delivered the small crane, he was instructed to go to the green-space to help with the assembly of the 600-crane.  *See* Exhibit G, 69:17–21.

9.      The Defendant CSX Transportation, Inc. ("<u>CSX</u>" or "<u>Defendant</u>"), through its representative directed the location to be used by Clark Rigging in order to set up the required equipment for the work.  *See* Exhibit H, 27:8-16, 28:6-21.

10.    CSX is the owner of the property upon which the bridge structures were being removed, as well as the owner of certain green-space where a 600-crane was being assembled in connection with the project.  *See* Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit H, 28:18–21.

11.    The 600-crane was intended to be used for Phase Three of the Buffalo Terminal Project.  *See* Exhibit E, 64:9–21.

12.    There were about nine or ten trailers in the green-space containing pieces for the 600-crane.  *See* Exhibit E, at 26:17–21; Exhibit G, 68:22–25, 69:1–5.

13.    During the assembly, Plaintiff's role was to hold a rope/tag-line to steer and guide the winch while it was being lifted off of the trailer, which was considered standard procedure. *See* Exhibit D, at 15:8–17; Exhibit E, 66:10–14; Exhibit G, 106:11–14.

14.    The subject trailer with the winch came directly from Syracuse, was on a Syracuse lowboy trailer, and was delivered to the jobsite by a Syracuse driver.  *See* Exhibit F, 15:3–11, 18:12–15.

15.    The winch was located in the middle of the Syracuse lowboy trailer, favoring the back end.  *See* Exhibit E, 13:2–7; Exhibit G, 89:17–22.

16.    Near the front of the lowboy trailer, there is typically an opening where chains are kept when they are not in use; this opening on the Syracuse lowboy trailer was visible to the Clark Rigging employees.  *See* Exhibit D, 27:10–15; Exhibit G, 117:3–5.

17.    Portions of the lowboy trailer deck could not be seen because the piece of equipment was covering it.  *See* Exhibit D, 19:17–23, 20:1; Exhibit E, 14:3–9; Exhibit G, 123:20–22.

18.    None of the Clark Rigging employees knew that there was a missing plank of wood on the Syracuse lowboy trailer underneath the piece of equipment.  *See* Exhibit E, 68:4–8; Exhibit G, 123:16–19.

19.    In the afternoon of July 21, 2017, Clark Rigging employees began assembly of the 600-crane.  *See* Exhibit D, 12:16–18; Exhibit G, 101:12–20.

20. The Clark Rigging employee operating the small crane lifted the winch between a foot and three feet off of the lowboy trailer into the air. *See* Exhibit E, 14:14–23; Exhibit G, 115:1–4.

21. As the winch was being lifted by a smaller crane, Plaintiff was holding the rope/tag-line, guiding it; as he was walked three to five steps with the winch, he stepped into the portion of the lowboy trailer deck that was missing a plank and fell through the trailer. *See* Exhibit D, 24:13–19; Exhibit E, 17:3–9; Exhibit G, 118:17–19.

22. The distance from the ground to the deck of the Syracuse lowboy trailer was about 18 inches. *See* Exhibit D, 32:4–7; Exhibit G, 118:19–24.

23. The lowboy trailer deck is made up of two by twelve wooden planks. *See* Exhibit G, 84:15.

24. The hole on in the trailer deck measured about twelve inches wide and three to four feet long. *See* Exhibit G, 97:2-9.

25. Lowboy trailer decks are considered "walking-working surfaces." *See* Exhibit F, 25:9–13.


DATED:      Buffalo, New York
               September 14, 2021

                                  **LOTEMPIO P.C. LAW GROUP**

                               By: /s/BOYD L. EARL, ESQ.
                                   Boyd L. Earl, Esq.
                                 *Attorneys for Plaintiff*
                                 181 Franklin Street
                                 Buffalo, New York 14202
                                 Phone: (716) 855-3761
                                 Email: boydearl@gmail.com

TO:    Philip Gulisano, Esq.
        NASH CONNORS, P.C.
        *Attorneys for Defendant*
        344 Delaware Avenue, Suite 400
        Buffalo, New York 14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALAN WALTER

                    Plaintiff,                    **<u>AFFIRMATION OF SERVICE</u>**

   -vs-

                                                 Docket No.: 1:19-cv-01583-WMS-JJM
CSX TRANSPORTATION, INC.

                  Defendant.
_____

       I, BOYD L. EARL, ESQ., make the following affirmation under penalty of perjury:

       That on September 14, 2021, affiant served a copy of the Motion for Summary Judgment in the above-entitled action upon all of the parties in this case by mailing the motion papers enclosed in a first-class, postage paid wrapper and properly addressed to the attorney for Defendant, CSX Transportation, Inc., at the following address: **Philip Gulisano, Esq., Nash Connors, P.C., 344 Delaware Avenue, Suite 400, Buffalo, New York 14202**, placed in an official depository under the exclusive care and custody of the United States Post Office Department, located at Franklin and Mohawk Streets in Buffalo, New York.

       I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

       Affirmed this 14th day of September, 2021.

                                 /s/BOYD L. EARL, ESQ.
                                 BOYD L. EARL, ESQ.