UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALAN WALTER,

                Plaintiff,

v.

CSX TRANSPORTATION, INC.,

                Defendant.

**DECISION AND ORDER**
19-CV-1583S

## I.   Introduction

This is a removed diversity action for the personal injuries suffered by Plaintiff on or about July 21, 2017 (Docket No. 1, Notice of Removal, Ex. A, Compl.).  Plaintiff alleges that the negligence of and noncompliance with provisions of New York Labor Law by Defendant CSX Transportation, Inc. ("Defendant") caused his injuries (id.).   As his counsel later argues (see Docket No. 39, Pl. Atty. Affirm. ¶¶ 4, 6), for want of plank, Plaintiff fell into a hole and injured himself.

Presently before this Court are the parties' respective Motions for Summary Judgment (Docket Nos. 30 (Plaintiff), 32 (Defendant)).   Plaintiff moved for judgment applying strict liability standards under New York Labor Law against Defendant (Docket No. 30).  Defendant opposes and moves for summary judgment denying the applicability of the Labor Law (Docket No. 32).

For the reasons stated below, Plaintiff's Motion for Summary Judgment (Docket No. 30) is **denied**, and Defendant's Motion for Summary Judgment (Docket No. 32) is **granted**.  This case is dismissed.

## II.   Background

### A.  Complaint

According to the Complaint (Docket No. 1, Ex. A), Defendant contracted with Clark Rigging & Rental Corporation ("Clark Rigging") for construction work in Buffalo, New York (id. ¶ 11).  Clark Rigging employed Plaintiff (id. ¶ 14).  On July 21, 2017, "Plaintiff was caused to sustain severe and permanent injuries through the negligence, carelessness and recklessness" of Defendant and "as a result of dangerous, hazardous, defective and unsafe conditions existing threat" (id. ¶ 15).

The First Cause of Action alleges Defendant's negligence (id. ¶¶ 1-20).  The Second Cause of Action alleges Defendant's noncompliance with New York Labor Law §§ 200, 240, and 241(6), provisions of the State Industrial Code, and unspecified provisions of federal Occupation Safety and Health Regulations, leading to Plaintiff's injuries (id. ¶¶ 23, 21-25; see Docket No. 35, Pl. Opposing Statement ¶ 8 (Plaintiff alleges violations of Labor Law §§ 240(1), 241(6), 12 N.Y.C.R.R. § 23-1.7); Docket No. 32, Def. Statement ¶ 8; Docket No. 32, Def. Atty. Aff., Ex. D (Pl. Response to Interrog. No. 6)).

### B.  Facts

Each party submitted a Statement of Facts in support of their respective Motions (Docket Nos. 30, 32).  They responded, replied to those Statements, and Defendant submitted its Counterstatement (Docket Nos. 38, 39, 35).  Each side generally accepts the facts as asserted by the opponent.  Most of the facts stated therein are undisputed.

Pursuant to this Court's Local Civil Rule 56(a)(1) and (2), this Court accepts the facts agreed upon by the parties while noting material disagreements.

Niagara Erecting, Inc. (an affiliate of Clark Rigging), contracted with Defendant to remove bridge structures from the CSX right of way (Docket No. 30, Pl. Statement ¶ 1). Clark Rigging furnished crane rentals (Docket No. 32, Def. Statement ¶ 18).  For a phase of Defendant's construction project, Clark Rigging was to supply and use cranes for the removal and replacement of bridges, including use of the 600-ton crane  ("600-crane") (Docket No. 30, Pl. Statement ¶¶ 3-4, 11;  Docket No. 32, Def. Statement ¶ 7; Docket No. 35, Pl. Opposing Statement ¶ 7).

The parties agreed that Clark Rigging owned flatbed trailers, including lowboy trailers (Docket No. 35, Pl. Opposing Statement ¶ 21; Docket No. 32, Def. Statement ¶ 21; but cf. Docket No. 35, Pl. Opposing Statement ¶ 21 (Plaintiff emphasized that Clark Rigging owned trailers at various facilities)).  Plaintiff's duties with Clark Rigging included transporting cranes and crane components to worksites and assisting in setting up cranes (Docket No. 32, Def. Statement ¶ 22).  Plaintiff claims that that his responsibilities with Clark Rigging also included setting up cranes (Docket No. 35, Pl. Opposing Statement ¶ 17; cf. Docket No. 32, Def. Statement ¶ 17).

Clark Rigging began assembly of the 600-crane on July 21, 2017 (Docket No. 38, Def. Opposing Statement ¶ 6; cf. Docket No. 30, Pl. Statement ¶ 6; Docket No. 32, Def. Statement ¶¶ 13, 15).  There were two cranes on the site:  the 600-crane and the smaller crane used to assemble the 600-crane (Docket No. 32, Def. Statement ¶ 16).

On July 21, Plaintiff picked up a trailer from Clark Rigging's lot containing a fully assembled small crane on a lowboy trailer.  He brought this crane and trailer to Defendant's job site (Docket No. 30, Pl. Statement ¶ 7; Docket No. 38, Def. Opposing

Statement ¶ 27.)  After delivering that crane, Plaintiff was instructed to help with assembly of the 600-crane (Docket No. 30, Pl. Statement ¶ 8).

After assisting with attaching a boom to the 600-crane, Plaintiff drove the tractor back to the yard to retrieve another lowboy trailer (Docket No. 38, Def. Opposing Statement ¶ 30; <u>see</u> Docket No. 39, Pl. Reply Statement ¶ 30 (admission)).  This is the Syracuse lowboy trailer with a winch on it (Docket No. 30, Pl. Statement ¶ 14; Docket No. 30, Pl. Atty Affirm. Ex. G, Pl. Tr. at 94; Docket No. 38, Def. Opposing Statement ¶ 30; <u>see</u> Docket No. 39, Pl. Reply Statement ¶ 30).  Plaintiff denies any role in loading the Syracuse lowboy trailer where he subsequently had his accident (Docket No. 39, Pl. Reply Statement ¶ 26).

The deck of the Syracuse lowboy was made of 2-inch by 12-inch wooden planks (Docket No. 30, Pl. Statement ¶ 23).  This deck, however, was not visible and none of the Clark Rigging employees (including Plaintiff) knew there was a missing plank on that deck underneath a piece of equipment (<u>id.</u> ¶¶ 17-18).  The hole from this missing plank was 12 inches by 3-4 feet long (<u>id.</u> ¶ 24; Docket No. 30, Pl. Atty. Affirm., Ex. G, Pl. Dep. Tr. at 97; <u>cf.</u> Docket No. 38, Def. Opposing Statement ¶ 24 (admission)).

Plaintiff argues that the deck was a "walking-working surface" (Docket No. 30, Pl. Statement ¶ 25), while Defendant calls this a legal conclusion rather than a statement of fact (Docket No. 38, Def. Opposing Statement ¶ 25).

Clark Rigging employees then assembled the 600-crane with one employee operating the small crane to lift the winch from the Syracuse lowboy trailer (Docket No. 30, Pl. Statement ¶¶ 19, 20).  Plaintiff held the rope/tagline to the winch guiding the airborne winch (<u>id.</u> ¶ 21; <u>see</u> Docket No. 38, Def. Opposing Statement ¶ 35).

The parties differ with what occurred next.  Plaintiff claims he walked three to five steps and stepped into the hole in the Syracuse lowboy deck, falling through the trailer (Docket No. 30, Pl. Statement ¶ 21).  Plaintiff denied tripping or slipping; he claims that he stepped with his right foot into an opening in the deck (Docket No. 38, Def. Opposing Statement ¶ 39; see Docket No. 39, Pl. Reply Statement ¶ 39 (admission)).  Citing his deposition testimony, Plaintiff claims he hit his knee, still holding onto the rope/tagline.  One of his Clark Rigging supervisors, John Clark, asked Plaintiff if he was all right and Plaintiff replied that he was okay.  (Docket No. 39, Pl. Reply Statement ¶ 42.)  He then testified that he had to sit down and that "everything just locked up.  I got pain in my leg, my knee, my back, my neck."  (Id., citing Docket No. 30, Pl. Atty. Affirm. Ex. G, Pl. Dep. Tr. at 132).

Defendant counters that Plaintiff was incorrect and claims that he did not fall through the trailer (Docket No. 38, Def. Opposing Statement ¶ 21).  Citing Plaintiff's deposition testimony, Defendant argues that Plaintiff testified that his right foot stepped into the hole in the lowboy deck for "a spilt-second" while his left foot remained on the deck and his right foot "went in and out" of the opening and he kept going (id.; Docket No. 30, Pl. Atty. Affirm. Ex. G, Pl. Dep. Tr. at 132, 144 (question asking if Plaintiff's foot went in and out)).  In its Counterstatement, Defendant concludes from Plaintiff's testimony that, as he walked following the winch, he went down into a hole and "whacked my right knee" (Docket No. 38, Def. Opposing Statement ¶ 38; Docket No. 30, Pl. Atty. Affirm. Ex. G, Pl. Dep. Tr. at 118; see Docket No. 39, Pl. Reply Statement ¶ 38 (admission)).  Defendant contends that after Plaintiff "momentarily" stepped into the opening, he did not release

the tag line, and he continued performing his task of helping to guide the winch as it was hoisted to the 600-crane (Docket No. 38, Def. Opposing Statement ¶ 42).

Plaintiff states that the distance from the lowboy deck to the ground was about 18 inches (Docket No. 30, Pl. Statement ¶ 22).  Defendant adds that Plaintiff testified that this deck was approximately a foot or foot and a half above the ground (Docket No. 32, Def. Statement ¶ 36; cf. Docket No. 35, Pl. Opposing Statement ¶ 36 (admission of ¶ 36); No. 38, Def. Opposing Statement ¶ 22; Docket No. 30, Pl. Atty. Affirm. Ex. G, Pl. Dep. Tr. at 117).

Defendant produced photographs (accepted by Plaintiff for these Motions) of the Syracuse lowboy trailer and the hole in the deck.  Plaintiff identified in the picture the site of the accident.  (Docket No. 38, Def. Atty. Aff. Exs. A, B; id. Def. Opposing Statement ¶¶ 40-41; Docket No. 30, Pl. Atty. Affirm. Ex. G, Pl. Dep. Tr. at 104, 120.)

Defendant states that Clark Rigging handled the set-up of the crane and Defendant was not involved in the process (Docket No. 32, Def. Statement ¶ 47; Docket No. 35, Pl. Opposing Statement ¶ 47 (admission)).  Plaintiff had no interaction with Defendant and that he received all his supervision from Clark Rigging and not from Defendant (Docket No. 32, Def. Statement ¶¶ 48, 50-52; see Docket No. 35, Pl. Opposing Statement ¶¶ 48, 50-52 (admissions)).

Defendant did not conduct a visual inspection of the lowboy trailer prior to the accident (Docket No. 32, Def. Statement ¶¶ 55, 62-63; see Docket No. 35, Pl. Opposing Statement ¶¶ 55, 62-63 (admissions)).  No one from Defendant witnessed the accident (Docket No. 32, Def. Statement ¶ 57; see Docket No. 35, Pl. Opposing Statement ¶ 57 (admission)).

C.  Proceedings and Motion Practice

Plaintiff filed this action in New York State Supreme Court in October 2019 (Docket No. 1, Notice of Removal, Ex. A).   Then-Defendants CSX Transportation, Inc., CSX Corporation, and CSX Intermodal Terminals, Inc. removed this action (Docket No. 1). The parties later stipulated to the dismissal of Defendants CSX Corporation and CSX Intermodal Terminals (Docket No. 5; see Docket No. 7, text Order of Dec. 16, 2019, adopting Stipulation).   Defendant CSX Transportation then answered on December 27, 2019 (Docket No. 11).

Under the Second Amended Case Management Order, dispositive motions were due by September 15, 2021 (Docket No. 25).   The parties then filed their timely Motions for Summary Judgment (Docket Nos. 30[1], 32[2]).   Responses to both Motions were due by October 13, 2021, and replies by October 27, 2021 (Docket Nos. 31, 33).   Both Motions were deemed submitted without oral argument.

---

[1] In support of his Motion, Plaintiff submits his Affidavit (with exhibits); the Affidavit of counsel and exhibits; the Statement of Undisputed Facts; and Memorandum of Law, Docket No. 30.  In reply, Plaintiff submits his attorney's Affirmation and a Reply to Defendant's Counterstatement of Facts, Docket No. 39.
In opposition (in addition to its own Motion, Docket No. 32), Defendant submits its Opposing Statement pursuant to Local Rule 56(a)(2) and Counterstatement of Facts; opposition Memorandum of Law; and exhibits, Docket No. 38.

[2] In support of its Motion, Defendant submits its attorney's Affidavit with exhibits; its Statement of Undisputed Facts; and Memorandum of Law, Docket No. 32.   Defendant also submitted its attorney's Affidavit in further support of the Motion, Docket No. 40.
In opposition (in addition to his Motion, Docket No. 30), Plaintiff submits his attorney's Affidavit with exhibits; Memorandum of Law, Docket Nos. 35, 36, 27.

### III.   Discussion

A. Applicable Standards

1. Motion for Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

## 2.  Choice of Law

In diversity cases, federal court applies substantive law of the jurisdiction where the Court sits, here of New York, see Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (including state's choice of law regime); see also Giarcla v. Coca-Cola Co., No. 17CV359, 2021 WL 1110397, at *3-4 (W.D.N.Y. Mar. 23, 2021) (Skretny, J.) (Docket No. 30, Pl. Memo. at 3).  Under New York choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual

conflict between the laws of the jurisdiction involved." <u>Matter of Allstate Ins. Co.</u>, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).

In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred. <u>See</u> <u>Cooney v. Osgood Machinery, Inc.</u>, 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993).  Here, the accident occurred in New York.  Both sides cite New York law, in particular provisions of New York Labor Law and New York State Industrial Code, without citing law from anywhere else.  There is not conflict; thus, New York substantive law applies.

### 3.  New York Labor Law

Plaintiff cites three provisions of New York Labor Law.  New York Labor Law § 200(1) codifies the duty of property owners or contractors to provide construction site workers with a safe work environment, <u>Allen v. Cloutier Constr. Corp.</u>, 44 N.Y.2d 290, 299, 405 N.Y.S.2d 630, 633 (1978) (Docket No. 32, Def. Memo. at 3).  "The general common-law principles governing landowners' duty to provide a safe workplace may be found" in this section, <u>Ross v. Curtis-Palmer Hydro-Elec. Co.</u>, 81 N.Y.2d 494, 503, 601 N.Y.S.2d 49, 54 (1993).  "In contrast, the 'specific, positive commands' applicable to all contractors and owners are contained in Labor Law § 240(1), which governs elevation-related safety measures," <u>id.</u> at 503, 601 N.Y.S.2d at 54.  While "Labor Law § 241(6) is, in a sense, a hybrid, since it reiterates the general common-law standard of care and then contemplates the establishment of specific detailed rules through the Labor Commissioner's rulemaking authority," <u>id.</u> at 503, 601 N.Y.S.2d at 54.

a.   Labor Law § 200(1) and Common Law Negligence

Section 200(1) provides that

"All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places.  All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.  The board may make rules to carry into effect the provisions of this section."

N.Y. Labor Law § 200(1).

Defendant is liable under § 200 if the defendant has actual or constructive notice of the unsafe condition and failed to remedy it, Bayo v. 626 Sutter Ave. Assocs., 106 A.D.3d 648, 648, 966 N.Y.S.2d 390, 391 (1st Dep't 2013) (citing cases) (Docket No. 32, Def. Memo. at 5).

b.   Section 240(1)

Section 240 provides that

"All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

N.Y. Labor Law § 240(1).  Courts have held that liability under this statute is strict or absolute, extending to "owners or contractors not actually involved in construction can be held liable" for failing to provide safety devices, Blake v. Neighborhood Hous. Servs. of N.Y.C., Inc., 1 N.Y.3d 280, 287, 771 N.Y.S.2d 484, 488 (2003) (discussing cases).

To state a § 240(1) claim, Plaintiff thus needs to prove a statutory violation and proximate cause from that violation, id. at 287, 771 N.Y.S.2d at 488 (Docket No. 30, Pl. Memo. at 4).

As observed by Defendant here (Docket No. 38, Memo. at 2-3), the purpose of § 240(1) is not to protect workers from "routine workplace risks, but from the pronounced risks arising from construction work site elevation differentials, and, accordingly, that there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk," Runner v. New York Stock Exch., Inc., 13 N.Y.3d 599, 603, 895 N.Y.S.2d 279, 281 (2009); see Rocovich v. Consolidated Edison Co., 78 N.Y.2d 509, 514, 577 N.Y.S.2d 219, 222 (1991).

c.   Section 241(6)

Section 241(6) states that

"All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.   The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

N.Y. Labor Law § 241(6).

To state a claim under this section, Plaintiff must establish a violation of a specific section of the New York State Industrial Code, 12 N.Y.C.R.R. ch. 1, Subch. A, part 23; see id. § 23-1.7 (protection from general hazards), and that the violation proximately caused Plaintiff's injuries, Ross, supra, 81 N.Y.2d at 503-05, 601 N.Y.S.2d at 54-55 (Docket No. 38, Def. Memo. at 7-8; see Docket No. 30, Pl. Memo. at 12, citing Pilkington v. Tutor Perini Bldg. Corp., No. 17CV60, 2020 WL 185542, at *9 (S.D.N.Y. Mar. 18,

2020)).  To sustain a claim under § 241(6), "a plaintiff must establish no genuine dispute of fact that (1) the defendant was an owner, contractor, or agent of an owner or contractor; (2) 'that the defendant violated a specific, "concrete" implementing regulation of the Industrial Code'; and (3) that the violation was the 'proximate cause' of the plaintiff's injury," id. (Docket No. 30, Pl. Memo. at 12), citing Rossi v. 140 W. JV Manager LLC, 58 Misc.3d 1215(A), 95 N.Y.S.3d 126 (Sup. Ct. N.Y. County 2018), aff'd, 171 A.D.3d 668, 99 N.Y.S.3d 38 (1st Dep't 2019). The violated Industrial Code provision must be "specific, positive command" and applicable to the facts of the case, Forschner v. Jucca Co., 63 A.D.3d 996, 998, 883 N.Y.S.2d 63, 67 (2d Dep't 2009); see Rizzuto v. L.A. Wenger Constr. Co., 91 N.Y.2d 343, 349, 670 N.Y.S.2d 816, 819 (1998) (Docket No. 38, Def. Memo. at 8).

The State Industrial Code protects workers from general hazards in the workplace, including falling through hazardous openings, 12 N.Y.C.R.R. §§ 23-1.7, 23-1.7(b).  For hazardous openings, the Code requires

"(i) Every hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule).

"(ii) Where free access into such an opening is required by work in progress, a barrier or safety railing constructed and installed in compliance with this Part (rule) shall guard such opening and the means of free access to the opening shall be a substantial gate. Such gate shall swing in a direction away from the opening and shall be kept latched except for entry and exit.

"(iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:

"(a) Two-inch planking, full size, or material of equivalent strength installed not more than one floor or 15 feet, whichever is less, beneath the opening; or

"(b) An approved life net installed not more than five feet beneath the opening; or

    "(c) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage."

Id. § 23-1.7(b).

    B.  Parties' Contentions

Essentially, Plaintiff contends that Defendant is strictly liable under provisions of the New York Labor Law and the New York State Industrial Code applicable for hazardous openings.   Defendant (in opposing Plaintiff's Motion and in support of its own Motion) denies application of Labor Law and the Industrial Code to this accident.

    1.  Plaintiff's Motion (Docket No. 30)

Plaintiff argues that there are no material issues of fact, and, under New York Labor Law, Defendant is liable for his injuries, concluding that he is entitled to summary judgment.  As a contractor and owner of the property upon which construction work was performed, Plaintiff believes that Defendant owed him a nondelegable duty to protect him and other workers from hazardous conditions.   Under Labor Law § 240(1), Defendant should have erected devices to provide protection to workers like Plaintiff (such as a cover for the hole in the deck), but Defendant violated that statute by failing to cover the hole in the lowboy trailer deck that Plaintiff fell through.   Labor Law § 241(6) also requires Defendant to "provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places," N.Y. Labor L. § 241(6), but Plaintiff contends that Defendant failed to do so.  Plaintiff concludes that the missing plank on the lowboy trailer was a hazardous condition and failure to provide devices to prevent Clark Rigging employees from falling violated Labor Law §§ 240(1) and 241(6) as well as New York Industrial Code § 23-1.7(b), 12 N.Y.C.R.R. § 23.1.7(b).  (Docket No. 30, Pl. Memo.) Plaintiff claims he worked on an "elevated work site" governed by § 240(1) (id. at 7-8).

In addition to its Motion for Summary Judgment (Docket No. 32), Defendant opposes Plaintiff's Motion because his accident did not involve an elevated-related risk which Labor Law § 240(1) was designed to protect (Docket No. 38, Def. Memo. at 2-7). Defendant also denies violation of the Industrial Code to create liability under Labor Law § 241(6) (id. at 7-11).

### 2.  Defendant's Motion (Docket No. 32)

In its Motion, Defendant argues that it did not exercise supervisory control over Clark Rigging's work or Plaintiff's work at the time of the accident; thus, his negligence and Labor Law § 200 claims should be dismissed (Docket No. 32, Def. Memo. at 1, 3-6). Defendant contends it did not create the condition or have actual or constructive notice of it for § 200 liability (id. at 5-6), Brown v. New York-Presbyterian Healthcare Sys., Inc., 123 A.D.3d 612, 612, 999 N.Y.S.2d 66, 68 (1st Dep't 2014) (hereinafter "NY-Presb.").

Defendant denies that the hole in the lowboy trailer deck was a "gravity-related hazard against which Labor Law § 240(1) was designed to protect" (id. at 1, 6-9). Defendant next argues that Plaintiff's Labor Law § 241(6) claim also should be dismissed because none of the alleged Industrial Code provisions, especially addressing falling hazards, apply to this case (id. at 1, 9-17, 1-11, 12-13).  Defendant claims that the opening in the lowboy trailer deck was too small to be a "hazardous opening" under Industrial Code § 23-1.7(b)(1) to require Defendant's protective action (Docket No. 32, Def. Memo. at 12; Docket No. 38, Def. Memo. at 9).

In addition to supporting his Motion for Summary Judgment (Docket No. 30), Plaintiff argues in opposition to Defendant's Motion that it should be denied because Plaintiff's work was regulated by Labor Law §§ 240(1) and 241(6) as on an elevated site

and the deck gap was large enough for a worker (especially Plaintiff) to fall through, creating a hazard (Docket No. 35, Pl. Memo. at 4-10, 10-14).

### C.  Analysis:  Defendant's Liability Under New York Labor Law

#### 1.  Labor Law § 200 and Common Law

Plaintiff has not argued that Labor Law § 200 applies here or refuted Defendant's arguments denying its negligence or liability under that statute.  As conceded by Plaintiff (Docket No. 35, Pl. Opposing Statement ¶¶ 47-52 (admissions)), Defendant did not supervise Plaintiff or control his work or the surface he worked upon.  Plaintiff has not established Defendant's common law negligence leading to his accident.  Defendant did not inspect the lowboy trailer (id. ¶¶ 55, 62 (admissions)) and Plaintiff did not believe that Defendant knew or could have known about the condition of the lowboy trailer (id. ¶ 54 (admission)), thus, Defendant did not have actual or constructive notice of the condition of that trailer or of its missing plank.  With equipment on that lowboy trailer, Clark Rigging's employees also did not see the hole from the missing deck plank (Docket No. 30, Pl. Statement ¶¶ 17-18).

Plaintiff has not established Defendant's common law negligence or Labor Law § 200 liability.  There was no actual or constructive notice upon Defendant as to the condition of the lowboy trailer produced by Clark Rigging (see Docket No. 37, Pl. Opposing Statement ¶ 47 (admission)).  Defendant did not inspect the lowboy trailer (id. ¶ 55 (admission)).  As Plaintiff claims, all Defendant did was to direct where the trailer would be located on this jobsite (Docket No. 30, Pl. Statement ¶ 9).  Plaintiff thus fails to state a negligence claim under common law or Labor Law § 200, NY-Prebs., supra,

123 A.D.3d at 612, 999 N.Y.S.2d at 68.   Defendant's Motion for Summary Judgment (Docket No. 32) dismissing this claim is granted.

### 2.  Labor Law § 240(1)

Courts have held that working on a trailer is not exposure to "any gravity-related risk arising from his work," NY-Prebs., supra, 123 A.D.3d at 612-13, 999 N.Y.S.2d at 68 (citing cases), under § 240(1) (Docket No. 32, Def. Memo. at 7-8; Docket No. 38, Def. Memo. at 4).  Plaintiff distinguishes Brown v. New York-Presbyterian because a wooden plank could have prevented his accident, while the court in that case found that no safety device would have avoided the injury (Docket No. 35, Pl. Memo. at 9), NY-Prebs., supra, 123 A.D.3d at 612-13, 999 N.Y.S.2d at 68.

In that case, Reynolds Brown was working on a flatbed trailer, sinking his left leg into a hole up to his hip and sustaining an injury.  The court dismissed his § 240(1) claim on two grounds, that he was "working on a flatbed trailer at the time of the accident and was not exposed to any gravity-related risk arising from his work," id. at 612, 999 N.Y.S.2d at 68 (citing Kulovany v. Cerco Prods., Inc., 26 A.D.3d 224, 225, 809 N.Y.S.2d 48, 49 (1st Dep't 2006) (falling through a deck up to the knee not considered "an elevation-related risk"); Rice v. Board of Educ. of City of N.Y., 302 A.D.2d 578, 580, 755 N.Y.S.2d 419, 421 (2d Dep't 2003)).  The court also found that no safety device there could have prevented Brown's accident, NY-Prebs., supra, 123 A.D.2d at 612-13, 999 N.Y.S.2d at 68.  Key here is the absence of exposure to an elevation risk for working on a trailer bed.

"The task of unloading a truck is not an elevation-related risk simply because there is a difference in elevation between the ground and the truck bed," Rice, supra, 302 A.D.2d at 580, 755 N.Y.S.2d at 421 (citing cases).  In Rice, the flatbed truck had a

one foot by one foot hole in its deck and Thomas Rice's leg went into that hole as afar as his thigh, approximately two and a half to three feet, id. at 579, 755 N.Y.S.2d at 421.  The court then held that the size of the hole in a deck also determines whether safety devices were required for it under § 240(1), see id. at 580, 755 N.Y.S.2d at 421 (quoting Alvia v. Teman Electr. Contr., Inc., 287 A.D.2d 421, 422, 731 N.Y.S.2d 462, 464 (2d Dep't 2001)). The Appellate Division there found that a one foot by one foot hole "does not present an elevation-related hazard to which" protective devices are required, id. at 579, 580, 755 N.Y.S.2d at 421.

Here, Plaintiff claims that the lowboy trailer deck was 18 inches from the ground when he fell though the deck hole (Docket No. 30, Pl. Statement ¶ 22).  Other cases have held that truck beds or trailers elevated as high as four feet do not constitute the elevated-related risk covered by Labor Law § 240(1), e.g., Toefer v. Long I. R.R., 4 N.Y.3d 399, 406-09, 795 N.Y.S.2d 511, 514-16 (2005) (citing cases); Grabar v. Nichols, Long & Moore Constr. Corp., 149 A.D.3d 1489, 1490, 47 N.Y.S.3d 201, 202 (4th Dep't), leave denied, 29 N.Y.3d 909, 57 N.Y.S.3d 714 (2017).  Plaintiff tries to distinguish Toefer and other cases cited by Defendant on the facts of their accidents (cf. Docket No. 35, Pl. Memo. at 8).  The issue, however, is not the details of how plaintiffs were injured in these cases; rather, the issue is whether the trailer was required to be an elevated surface to impose strict liability under Labor Law to require safety devices on it for the elevation risk.  Plaintiff claims the lowboy deck was a "walking-working surface" (Docket No. 30, Pl. Statement ¶ 25; id. Pl. Atty. Affirm. ¶ 14, Ex. F, Richard Rydza Tr. at 25).  Richard Rydza, Clark Rigging's risk safety manager, testified that the lowboy deck was considered a walking-working surface where "you cannot physically do the work without walking onto the deck

to unbolt some of the equipment when it's chained down, so then it becomes a walking-working surface" (id., Ex. F Tr. at 25).  First, Plaintiff did not unbolt the winch from that deck and, second, for purposes of § 240(1) liability, the deck did not require Plaintiff to be elevated to assist the lift and movement of that winch.

Plaintiff cites a different Brown case, Brown v. 44 St. Dev., 137 A.D.3d 703, 27 N.Y.S.3d 389 (1st Dep't 2016), aff'g Brown v. 44th St. Dev., 48 Misc.3d 234, 5 N.Y.S.3d 692 (Sup. Ct. N.Y. County 2015), as an example of an elevated risk that led to Labor Law liability and the proposition that there was no minimum height differential under the Labor Law (e.g., Docket No. 30, Pl. Memo. at 4, 8).  These cases are distinguishable.  Plaintiff Donald Brown in those cases was walking on a latticework rebar deck when he fell through a gap, descending 12 to 18 inches, Brown, supra, 137 A.D.3d at 703-04, 27 N.Y.S.3d at 380; see Brown, supra, 48 Misc.3d at 236-37, 5 N.Y.S.3d at 694-95.  The Appellate Division noted that there was no minimum height differential for when an elevated hazard exists.  The 12 to 18-inch drop from Brown's fall "was the result of exposure to an elevation related hazard."  Brown, supra, 137 A.D.3d at 704, 27 N.Y.S.3d at 380.

Plaintiff also cites Myricks v. Hiawatha Realty Corp., 9 Misc.3d 1104(A), 806 N.Y.S.2d 446 (Sup. Ct. Onondaga County 2005), to reject any bright line rule excluding trailers as an elevation risk under the Labor Law  (Docket No. 35, Pl. Memo. at 6).  There, Plaintiff Robert Myricks fell from a truck bed while wielding a sledgehammer.  The court denied defendants' argument for a bright-line rule that a flatbed truck is not an elevated-related hazard by noting cases that did not require the work to be elevated, id. at *3 (citing cases, e.g., Toefer, supra, 4 N.Y.3d at 406, 795 N.Y.S.2d at 514).

In considering the cases that denied § 240(1) liability (such as <u>Toefer</u> and <u>Rice</u>), the <u>Myricks</u> court observed that

> "the task that the worker performed [in those cases] did not require the worker to be elevated.  For example, the height of the platform from which a worker is moving a load—whether it is a flatbed truck several feet off the ground or the ground itself—is immaterial to the task involved.  The task therefore does not pose an elevation-related hazard within the purview of Section 240(1),"

<u>Myricks</u>, <u>supra</u>, 9 Misc.3d 1104(A), 806 N.Y.S.2d 446, at *3.  The court cited alternative cases where elevation was required, <u>id.</u> at *3-4, citing <u>Watson v. Hudson Valley Farms Inc.</u>, 276 A.D.2d 1004, 1004, 714 N.Y.S.2d 810, 811 (3d Dep't 2000).  In <u>Watson</u>, a sign painter was furnished with a flatbed truck to paint a neighboring trailer.  The Appellate Division concluded that the truck bed was used as an equivalent of scaffold, qualifying the truck bed "as an elevation-related safety device," 276 A.D.2d at 1004, 714 N.Y.S.2d at 811.

The Supreme Court in <u>Myricks</u> then concluded that

> "the flatbed truck from which [Myricks] [sic] fell was the functional equivalent of a scaffold because the work he was performing at the time of the accident required him to be elevated.  In order for Myricks to perform his task of pounding eight-foot-long metal poles into the ground, he had to be elevated to a height from which he could effectively swing the pole hammer down onto the poles,"

9 Misc.3d 1104(A), 806 N.Y.S.22d 446, at *4.  Myricks' work "involved an elevated risk and thus was within the scope of Section 240(1) liability," <u>id.</u>  The court denied defendant summary judgment and grated Myricks summary judgment, <u>id.</u>

Applying this nuance developed by the <u>Myricks</u> court, whether a trailer is considered a site with an elevated-related risk turns on whether elevation is required to

perform the work.  Essentially, when the trailer is used as a scaffold it requires a safety device under Labor Law § 240(1).

Here, the lowboy trailer was used to unload the cranes and did not require elevation of the trailer.  The height of the lowboy's deck is not essential to this delivery. Despite Plaintiff's contention that he needed to be on the trailer deck to maneuver the rope/tagline (cf. Docket No. 35, Pl. Memo. at 6-7), Plaintiff did not need to be elevated twelve to eighteen inches off the ground to do this.  The height of that deck from the ground was not material.  Rydza testified that this deck was a walking-working surface referred to unbolting equipment and he made no reference to workers using the rope/tagline to move equipment.  This lowboy trailer is not the equivalent of a scaffold for its elevation to require safety devices (such as a cover for holes in its deck) under § 240(1).  Plaintiff walked on that deck to move the rope/tagline did not entail "'a significant risk inherent in [it] because of the relative elevation at which the task must be performed,'" Grabar, supra, 147 A.D.3d at 1490, 47 N.Y.S.3d at 202, quoting Rocovich, supra, 78 N.Y.2d at 514, 577 N.Y.S.2d at 222.  As a result, his work on the lowboy trailer was not an elevated-related risk that Labor Law § 240(1) was enacted to address.

Therefore, Defendant's Motion for Summary Judgment (Docket No. 32) dismissing Plaintiff's § 240(1) claim is granted and Plaintiff's Motion (Docket No. 30) for judgment on that ground in his favor is denied.

### 3.  Labor Law § 241(6) and State Industrial Code § 23-1.7(b)

Applying the elements for stating a Labor Law § 241(6) violation, there is no dispute that Defendant was owner or contractor.

For a § 241(6) violation, Plaintiff must point to specific provisions of State Industrial Code that Defendant violated.  According to Defendant (Docket No. 32, Def. Memo. at 10), Plaintiff alleges violations of Industrial Code §§ 23-1.7, 23-1.16, 23-1.22, 23-1.32, and 23-2.4 (Docket No. 32, Def. Atty. Aff. Ex. D; Docket No. 35, Pl. Opposing Statement ¶ 8 (citing State Industrial Code § 23-1.17); <u>see</u> Docket No. 1, Ex. A, Compl. ¶¶ 22, 23 (alleged violations of unspecified provisions of State Industrial Code)).  Pertinent to this case is the falling hazard and hazardous opening State Industrial Code § 23-1.7(b), 12 N.Y.C.R.R. § 23-1.7(b).  Plaintiff argues that Defendant violated § 23-1.7(b) (Docket No. 30, Pl. Memo. at 15-16; <u>see</u> Docket No. 35, Pl. Memo. at 11-14).  The other State Industrial Code provisions initially cited by Plaintiff here apply to different hazards (Docket No. 32, Def. Memo. at 10-17, 8).  Plaintiff did not argue that these other Code provisions applied to his accident.

State Industrial Code § 23-1.7(b) is a predicate for a Labor Law § 241(6) claim "but it does not apply to every gap or opening," <u>Coleman v. Crumb Rubber Mfrs.</u>, 92 A.D.3d 1128, 1130, 940 N.Y.S.2d 170, 172 (3d Dep't 2012).  The Industrial Code also does not define what is a "hazardous opening," <u>Messina v. City of N.Y.</u>, 300 A.D.2d 121, 123, 752 N.Y.S.2d 608, 609 (1st Dep't 2002).

Plaintiff argues that the size and distance of the opening from a lower surface are factors courts use to find whether an opening is hazardous (Docket No. 30, Pl. Memo. at 14-15, citing <u>Lawler v. Globalfoundries U.S., Inc.</u>, No. 1:12-CV-0327, 2014 WL 4900480, at *9-10 (N.D.N.Y. Sept. 30, 2014) (citing cases)).  Courts have held that an opening "must be of significant depth and size to fall within" State Industrial Code § 23-1.7(b)'s protection, <u>Coleman</u>, <u>supra</u>, 92 A.D.3d at 1130, 940 N.Y.S.2d at 172 (<u>id.</u> at 14).  While

there are no specific minima, cases have used a hole as large as a person to fall though as the standard, id. (citing cases). "It is not necessary, however, that an injured worker actually fall all the way through such an opening to sustain a claim premised on this regulation, and an opening 14 to 16 inches wide has been found sufficiently large to support such a claim," id. citing Pilato v. Nigel Enters., Inc., 48 A.D.3d 1133, 1135, 850 N.Y.S.2d 799, 801 (4th Dep't 2008); see Gallagher v. Levein & Co., 72 A.D.3d 406, 408, 898 N.Y.S.2d 35, 37 (1st Dep't 2010). In Gallagher, the Appellate Division held that the trial court properly declined to dismiss the § 241(6) claim predicated upon State Industrial Code § 23-17(b)(1) where Joseph Gallagher fell through a hole "up to his chest (albeit with one leg still atop the hole)," 72 A.D.3d at 408, 898 N.Y.S.2d at 37 (citing Messina, supra, 300 A.D.2d at 123-24, 752 N.Y.S.2d at 610). The Appellate Division then found other fact issues (whether the covering was secured or properly marked) that precluded judgment for Gallagher, id.

In Lawler, the United States District Court for the Northern District of New York applied State Industrial Code § 23-1.7 to Michael Lawler's Labor Law § 241(6) claim and held that the 24-inch by 24-inch by 36-inch-deep hole there was "large enough for someone to fall from the [raised metal floor] level to the waffle slab level below," deeming the hole a hazardous opening under the State Industrial Code, Lawler, supra, 2014 WL 4900480, at *10, 1 (Docket No. 30, Pl. Memo. at 14; Docket No. 35, Pl. Reply Memo. at 12-13).

Plaintiff contends that the hole in the lowboy deck was a hazard because it was a 3 to 4-foot by 1-foot hole that was approximately 1½ feet deep (Docket No. 30, Pl. Memo.

at 15).  He believes that it is possible for a worker to fall through a hole this size as he did (Docket No. 35, Pl. Memo. at 13).

Defendant, however, denies any hazard here because the hole was 1-foot wide and a person could not fall through that hole (Docket No. 38, Def. Memo. at 10; Docket No. 32, Def. Memo. at 13).  Defendant submits photographs of the lowboy trailer with one marked by Plaintiff confirming the location of the hole (Docket No. 38, Def. Atty. Aff. ¶ 3, Exs. A, B).  Plaintiff dismisses this contention because Defendant did not present admissible evidence that the lowboy deck hole was too small for a worker to fit through (Docket No. 35, Pl. Memo. at 13).

The State Industrial Code provision refers to hazardous openings that "a person may step or fall," 12 N.Y.C.R.R. § 23-1.7(b)(i).  The hazard thus includes stepping in an opening whether the body entirely falls through or not.  Cases have held that workers stated claims under State Industrial Code § 23-1.7 where they did not fall all the way into the hole and could (for example) have only a leg enter the hole to require coverage under State Industrial Code § 23-1.7, Coleman, supra, 92 A.D.3d at 1130, 940 N.Y.S.2d at 172; Lawler, supra, 2014 WL 4900480, at *10; Gallagher, supra, 72 A.D.3d at 408, 898 N.Y.S.2d at 37 (factual dispute as to dimensions of hole).  Although whether a worker (of unstated girth) could fall in the lowboy deck hole is disputed, that dispute is not material because a leg could fit into the hole in the deck, as Plaintiff did here.

Plaintiff Alan Walter stepped into  3 to 4-foot by 1-foot hole at a maximum depth of 18 inches.  Cases applying State Industrial Code § 23-1.7(b) define the dimensions for opening to be deemed hazardous and require regulation under the State Industrial Code. The Second Department held that a claim for falling into a one foot by one foot hole with

plaintiff falling 2½ to 3-foot depth that was not large enough for the plaintiff to completely fall through, Industrial Code § 23-1.7(b) was inapplicable, Rice v. Board of Educ. of City of N.Y., 302 A.D.2d 578, 579, 755 N.Y.S.2d 419, 421 (2d Dep't 2003); see also Messina, supra, 300 A.D.2d at 121-22, 123-24, 752 N.Y.S.2d at 609, 610-11 (12-inch diameter drain pipe with a 7-10-inch drop).   In D'Egidio v. Frontier Insurance Co., "While the regulation, on its face, appears to be applicable here, a reading of the regulation in its entirety reveals that a 'hazardous opening' must be one of significant depth and size, i.e., more than 5 by 12 inches wide and 15 to 24 inches deep, as existed here," properly dismissing the Labor Law § 241(6) claim, D'Egidio v. Frontier Ins. Co., 270 A.D.2d 763, 765, 704 N.Y.S.2d 750, 753 (3d Dep't 2000).

The Northern District of New York held that a 24 by 24-inch hole that is 3-foot deep was "large enough for someone to fall through" was hazardous for purposes of Industrial Code § 23-1.7, Lawler, supra, 2014 WL 4900480, at *10, 1, 9.  The court held that Plaintiff was entitled to judgment as matter of law on the issue of Defendant's violation of the Industrial Code, id. at *10.  Other  cases set forth allegations of the dimensions but found that issues of fact precluded entry of judgment for the defendant owners, Coleman, supra, 92 A.D.2d at 1130, 40 N.Y.S.2d at 172 (12 to 16-inches wide, depth at issue); Gallagher, supra, 898 N.Y.S.2d at 37 (parties differ on dimensions); Pilato, supra, 48 A.D.3d at 1134-35, 850 N.Y.S.2d at 800, 801 (14 to 16-inch space, 8 feet above the floor, with issue of fact on adequacy of protection).

Here, the depth (accepting the maximum of 18 inches from Plaintiff's testimony, cf. Docket No. 35, Pl. Opposing Statement ¶ 36 (admission of Docket No. 32, Def. Statement ¶ 36)), does not present a material issue of fact.  State Industrial Code § 23-1.7(b)

"establishes rules for protections against 'falling hazards.'   The safety measures required—planking installed below the opening, safety nets, harnesses and guard rails— all bespeak of protections against falls from an <u>elevated area</u> to a lower area through openings large enough for a person to fit in," <u>Messina</u>, <u>supra</u>, 300 A.D.2d at 123, 752 N.Y.S.2d at 610 (emphasis added) (cases cited omitted).

Eighteen inches in depth does not present a hazardous opening that would be regulated by State Industrial Code § 23-1.7(b).   As held above in dismissing the Labor Law § 240(1) claims, working from a lowboy trailer also fails to create an elevation-related risk that would be a code violation.   The lowboy trailer was not used to elevate Plaintiff like a scaffold to require safety devices under the Industrial Code.   The approximately 1½-foot difference from the trailer deck to the ground is not an elevation risk that violated the Industrial Code to state a Labor Law § 241(6) claim.   Cases have held that the State Industrial Code requires a hazardous opening be of a "significant depth  . . . i.e., more than 5 by 12 inches wide and <u>15 to 24 inches deep</u>," <u>D'Egidio</u>, <u>supra</u>, 270 A.D.2d at 765, 704 N.Y.S.2d at 765 (emphasis added) (Docket No. 32, Def. Memo. at 12); <u>cf.</u> <u>Lawler</u>, <u>supra</u>, 2014 WL 4900480, at *10 (three-foot deep hole held to be hazardous for purposes of § 23-1.7).   The Third Department in <u>D'Egidio</u> also held that, as a matter of law, § 240(1) was not violated because the accident was not an elevation-related hazard, <u>D'Egidio</u>, <u>supra</u>, 270 A.D.2d at 765, 704 N.Y.S.2d at 765.   Thus, an alleged elevated structure that is not an elevation-related hazard under Labor Law § 240(1) also fails to state a hazardous opening in violation of the State Industrial Code to state a claim under Labor Law § 241(6).

Plaintiff argues that his accident was proximately caused by the violation of the State Industrial Code because of the difference in elevation of the trailer creates a falling risk (Docket No. 30, Pl. Memo. at 17).  As held above, however, the distance from the ground to the lowboy trailer is not an elevated risk to have holes in that deck constitute a fall hazard governed by State Insurance Law § 23-1.7 for proximate causation of Plaintiff's injuries.  Hence, Plaintiff fails to state a specific violation of the State Industrial Code to state a claim under Labor Law § 241(6).

Plaintiff also has not cited a specific OSHA regulation despite alleging an OSHA violation in the Complaint (cf. Docket No. 1, Ex. A, ¶¶ 22-23).  He has not argued how Defendant would be liable for such a federal violation.  First, Defendant did not employ Plaintiff.  Second, OSHA regulations are not rules made by the New York State Labor Commissioner (save where those regulations are adopted by the Commissioner) to be the Commissioner's rules under Labor Law § 241(6).  Plaintiff has not argued an OSHA regulation was adopted by the State Labor Commissioner.

Thus, Defendant's Motion for Summary Judgment (Docket No. 32), dismissing the Labor Law § 241(6) claims in the Second Cause of Action, is granted, and Plaintiff's Motion (Docket No. 30) to grant him judgment on that Cause of Action is denied.

## IV.    Conclusion

Plaintiff fails to state a claim under New York Labor Law § 200 or allege common law negligence by Defendant, thus Plaintiff's First Cause of Action and so much of his Second Cause of Action alleging violation of § 200 is dismissed.  Plaintiff's remaining New York Labor Law claims presume hazardous conditions from the condition of the lowboy trailer deck that require safety measures.  New York law, however, holds that a

trailer is not an elevated surface requiring safety devices unless the trailer is used as a scaffold and like an elevated device.  The lowboy trailer here was used to ship equipment and not to elevate it or workers.  Plaintiff's work on that deck did not require elevation. Plaintiff thus fails to state claims under Labor Law §§ 240(1) and 241(6) or violation of the applicable State Industrial Code § 23-1.7(b).  Therefore, the remainder of the Second Cause of Action is dismissed.

Plaintiff's Motion for Summary Judgment (Docket No. 30) is denied, and Defendant's Motion for Summary Judgment (Docket No. 32) is granted.  As a result, this case is dismissed.

## V.    Orders

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 30) is DENIED.

FURTHER, that Defendant's Motion for Summary Judgment (Docket No. 32) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:      May 9, 2022
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge